(No. 33904.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JEROME WOODRUFF, Plaintiff in Error.

*Opinion filed September 25, 1956—Rehearing denied Nov. 19, 1956.*

Max A. Weston, of Rockford, and Myer H. Gladstone, of Chicago, (Edward J. Hladis, of counsel,) for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and Everett E. Laughlin, State's Attorney, of Freeport, (Fred G. Leach, Edwin A. Strugala, and Bert P. Snow, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The plaintiff in error was indicted and tried by a jury in the circuit court of Stephenson County and found guilty of the crime of bribery. The court sentenced the defendant to a term of imprisonment of from one to three years. The validity of the indictment was raised by motion to quash. Motion for new trial was filed which was overruled, and motion was made in arrest of judgment which was denied, and the case is before us on writ of error.

In seeking a reversal it is argued (1) that the count of the indictment on which the defendant was tried is void and that the court erred in denying the motion to quash the same; (2) that the State failed to prove the crime of bribery charged against the defendant because under the law the alleged officer had no lawful authority to weigh steel scrap; (3) that there is a complete failure of proof of the allegation that McHugh was the duly qualified weighmaster of the city of Freeport; (4) that the ordinance of the city of Freeport purporting to create the office of weighmaster and prescribing his duties is void and no valid appointment of a weighmaster could be made thereunder; (5) that McHugh was not an officer within the meaning of the bribery statute; (6) that there is no proof that defendant gave money to influence the alleged weighmaster in the exercise of his alleged official duties; and (7) that the court erred in the giving of instructions and invaded the province of the jury.

The case was tried on the third count of the indictment which in substance charged that the defendant, on January 29, 1955, in the county of Stephenson, did unlawfully, corruptly and feloniously give to one William McHugh, the duly qualified and acting weighmaster of the city of Freeport, a sum of money, good and lawful currency of the United States of America, the amount of money being unknown, with the intent then and there in him, the said

Woodruff, to influence the said McHugh to act with favor and partiality toward him, the said Woodruff, in the execution of his official duties as weighmaster of the city of Freeport, to-wit: to record false weights upon goods bought by said Woodruff from the Structo Manufacturing Company, a corporation, which said goods were weighed at the city scales, said money being given to said William McHugh at the office of Jerome Woodruff, situated on North Adams Street in said city of Freeport, contrary to the form of the statute in such case made and provided.

The evidence for the State showed that starting December 1, 1948, William McHugh took over the office of city weighmaster of the city of Freeport. He was continuously so employed until his discharge on January 29, 1955. No one else operated the city scales excepting a part-time employee who did the weighing when McHugh was sick or on vacation. Otherwise he was the only employee and he alone operated the city scales. Prior to 1951 McHugh had been hired by Louis Sanders, owner of Sanders Iron & Metal Company, and father-in-law of the defendant, to short-weigh all Structo Manufacturing Company scrap steel. At the end of each week Sanders "made it right" with McHugh in giving him cash for the short weights reported. During this time the defendant Woodruff was working for Sanders, his father-in-law. During this period, on several occasions, Woodruff made the pay-off for Sanders on the short weights. In August, 1954, Woodruff started his own scrap iron business and secured a contract with Structo for all of their scrap steel. Woodruff thereupon approached McHugh and told him he had secured the Structo scrap steel business and asked McHugh to help him as McHugh had helped Sanders Iron & Metal Co. McHugh agreed to do so and Woodruff said "he would make it right with me." Thereafter, for 24 consecutive weeks, up to and including January 29, 1955, McHugh short-weighed every load of scrap steel from Structo Manu-

facturing Company destined for the defendant Woodruff's business, with but one exception. That was the time when they were doing some remodeling at the scales. Shortly after the truck would leave the scales and go back to the defendant's yard the defendant would call up and ask what short weight McHugh had given him and the weight reported to Structo. McHugh would inform defendant of the shortage for the load. Although McHugh did not keep a record of the shortages he knew every load was short. The scrap had a value of about $28 per ton. The fact that McHugh was short-weighing the scrap was corroborated by test weights made by private detectives during the month of January, 1955. McHugh was paid off for his illegal short-weighing weekly, either on Saturday or, if the defendant was busy on Saturday, the pay-off was made on the following Monday.

On January 28, 1955, McHugh admitted the short weights to the police officers and a warrant was procured for his arrest and he was asked to empty out the entire contents of his purse the next day and go to Woodruff's office. He did so and when he came out of the building he was placed under arrest and served with a warrant, and he had $55 in United States currency in his purse. The defendant denied ever having agreed with McHugh to the short-weighing of scrap iron or that he had either paid or promised to pay him for the same and said that $35 of the $55 found in McHugh's purse when he was arrested was a loan he had made to McHugh. The defendant was corroborated by the testimony of his wife and one Ura Taylor, another employee of the defendant. Sandra Homan, an employee of the defendant, testified that she knew McHugh and on several occasions when he brought weight tickets to the office she paid for them out of funds for the Woodruff Company. She did that six to ten times and on no occasion did she pay him more than the amount of the weight tickets. The defendant admitted on cross-exam-

ination that although he paid almost all of his other business bills by check he paid the city weighmaster the city weighing fees in cash on all occasions and that he never took a receipt.

The rule is well known that the credibility of witnesses and the weight of evidence are, in the first instance, questions best determined by the jurors who are in a position to see and hear the witnesses and to observe their demeanor while testifying. It is for them to accept the testimony they believe, reject what they do not believe, and return a verdict accordingly. *People* v. *Wilson*, 1 Ill.2d 178, 187.

It is fundamental that this court will not disturb a verdict of guilty on the ground that the evidence is not sufficient to convict unless it is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify the court in entertaining a reasonable doubt of the defendant's guilt. Nor will we substitute our judgment for that of a jury in merely weighing the credibility of witnesses where the testimony is conflicting. *People* v. *Tensley*, 3 Ill.2d 615, 621.

On the factual issue in this case, we are unable to say that the evidence was insufficient to justify the jury, beyond a reasonable doubt, in the verdict that was rendered.

The plaintiff in error contends that William McHugh was neither an officer *de jure* nor *de facto* of the city of Freeport. It is argued that section 23—65 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1955, chap. 24, par. 23—65,) gives the city authority only "To provide for and regulate the inspection, weighing, and measuring of brick, lumber, firewood, coal, hay, and any article of merchandise of the same kind;" and that the ordinance of the city of Freeport does not follow the above statutory authority but authorizes the weighmaster "to weigh accurately and without partiality every load of wheat, corn, oats or other grain, every load of hay or coal, slaughtered

animals or livestock and every animal or other thing that may be produced to be weighed and to give to the person presenting the same to be weighed a certificate of the weight thereof upon payment being made to him of the fee hereinafter specified." It is argued that the city had no authority, under section 23—65, to provide for the weighing of "scrap steel" and that since the ordinance did not follow the authority granted by the statute the ordinance is void. But the statute does not attempt an exhaustive enumeration of all articles that might be weighed. Nor does it need to. Steel and steel scrap are materials of the same kind as are the brick and lumber specifically mentioned in the statute, and under the doctrine of *ejusdem generis* their inclusion in the ordinance was authorized by the statute.

It is next contended that the ordinance creating the office of weighmaster of the city of Freeport and providing for his appointment by the mayor, with the consent of the city council, provides that before entering upon the duties of his office he shall take the oath prescribed by law and execute a bond in the penal sum of $500 conditioned upon the faithful performance of the duties of his office. There is no evidence that William McHugh was ever officially appointed by the mayor and confirmed by the council or that he gave a bond and took the oath of office provided by the statute. The mayor testified that he had been mayor of Freeport since May, 1949, continuously to the present time; that the city maintained a city scale located in the city limits and that William McHugh was city weighmaster between July 1, 1954, and January 29, 1955, and that he had continuously been weighmaster since the witness went in office in 1949 but that the witness had not appointed William McHugh or anyone else to the office; that McHugh's duties were to weigh and give weights to the people of the community that would desire to have

different materials weighed on the city scales. No other person was employed in the office of the city weighmaster and he had no assistants.

Under this evidence plaintiff in error contends (1) that McHugh was not city weighmaster *de jure;* (2) that it would not be sufficient for him to be weighmaster *de facto;* and (3) that under the contention that the ordinance is void he was not even weighmaster *de facto.* We are unable to agree with these contentions. It is our opinion that the correct rule is that offering, giving, soliciting or accepting a bribe constitutes bribery where the one solicited, soliciting, or accepting the bribe, though not an officer *de jure,* was acting under the color of title of the office involved. In other words, an officer *de facto* is punishable for accepting or soliciting a bribe in the same manner as if he were an officer *de jure.* Likewise it is a crime to offer or to give him a bribe. 8 Am. Jur. sec. 15, p. 895.

In *People* v. *McCann,* 247 Ill. 130, there was an indictment against a police inspector for the city of Chicago for receiving a bribe, and it was contended that the defendant was never elected inspector of police and was never appointed to said office in the manner authorized by law and that he was never, in fact, a *de jure* officer, but we said, in sustaining a judgment of conviction, page 143: "We do not, however, think this a controlling question in determining the sufficiency of the indictment. If plaintiff in error was seeking to establish his title, or some right depending upon a valid title, to the office of police inspector, he would be required to show that he is a *de jure* officer. (*Stott* v. *City of Chicago,* 205 Ill. 281; *McNeill* v. *City of Chicago,* 212 id. 481; *Bullis* v. *City of Chicago,* [235 Ill. 472]; *Moon* v. *Mayor,* [214 Ill. 40].) But, as between himself and third parties, (the State in this case,) if the office of inspector of police of the city of Chicago had a legal existence and plaintiff in error assumed the duties and discharged the powers and functions of the office he became

a *de facto* officer, and cannot be permitted to deny his responsibility, while so acting, on the ground that he was not legally elected or appointed to said office. We are of opinion the ordinance pleaded did create the office of inspector of police."

It is a well settled principle that the acts of officers *de facto* are as valid and effectual where they concern the public or the rights of third persons as though they were officers *de jure* and that the title to an office cannot be decided in a collateral suit but only in a direct proceeding for that purpose. *Trumbo* v. *People,* 75 Ill. 561; *People ex rel. Sullivan* v. *Weber,* 86 Ill. 283; *Leach* v. *People ex rel. Patterson,* 122 Ill. 420.

The last two Illinois cases were cited with approval by the Supreme Court of Ohio in *State* v. *Gardner,* 54 O. St. 24, 42 N.E. 999, 31 L.R.A. 660, which has become a leading authority on the question. In that case the defendant was indicted for offering a bribe to Joseph Hugal, a city commissioner of the city of Akron. The accused demurred to the indictment on the ground that the act under which Hugal was performing the duties of his office was unconstitutional and void. The demurrer was sustained and the defendant discharged. Under the Ohio law the State had a right to have the action reviewed by the higher court. The Supreme Court discussed two questions on review, (1) whether the act was unconstitutional, and (2) if unconstitutional, whether its constitutionality may be assailed in the collateral way undertaken by the accused. The court, as a principle of public policy, held that the question of the constitutionality of the act could not be urged by the defendant, and sustained exception to the determination of the trial court in sustaining a demurrer to the indictment.

In *People ex rel. Rusch* v. *Wortman,* 334 Ill. 298, two women served as judge and clerk respectively in a precinct in the city of Chicago at an election held on November 2, 1926, at which time women were not eligible to serve as

such election officials. They were indicted and adjudged guilty of contempt of court for misbehavior in their respective offices at such election and sentenced to imprisonment in the county jail for one year. The defense was made that since they were not eligible to serve as election officials they were not guilty of the offense. The conviction was affirmed and we said, at page 302: "The courts uniformly hold that the acts of officers *de facto,* so far as they affect third parties or the public, are as valid as those of officers *de jure.* (*Coles County* v. *Allison,* 23 Ill. 437; *People* v. *Bangs,* 24 id. 184; *Howard* v. *Burke,* 248 id. 224; *Hussey* v. *Smith,* 99 U.S. 20.) The acts of officers *de facto* cannot be attacked collaterally as invalid but only in a direct proceeding by the proper authority. (*Coles County* v. *Allison, supra; People* v. *Pederson,* 220 Ill. 554; *People* v. *Severinghaus,* 313 id. 456.) The sureties upon the bond of a justice of the peace *de facto* are liable for his failure to pay over money collected in his official capacity without reference to the regularity of his election, commission or eligibility. (*Green* v. *Wardwell,* 17 Ill. 278.) The validity of his acts in exercising the powers of the office imposes correlative liabilities to the persons interested in those acts. In *People* v. *Newsome,* 291 Ill. 11, a defendant charged in an indictment with fraud and corruption in the conduct of an election was held not entitled to show that his appointment was illegal because there was no record of the establishment of the polling place for which he was appointed, the court holding him to be a *de facto* officer, liable under the law for his acts as such. The office of judge of election had a legal existence, the election was the general election authorized by law, the voters went to the polls and cast their ballots, the defendant acted throughout the day and at the canvass of the ballots as one of the election officers, and he could not escape responsibility for any delinquency on his part simply because of a mistake of the county board in not making

a proper record of the establishment of the election district. In *People* v. *McCann,* 247 Ill. 130, the defendant was indicted for bribery as a police inspector of the city of Chicago, and it was objected to the indictment that it did not show that he had been legally appointed to that office. The city council had by ordinance created the office of inspector of police but provided for the filling of the office by appointment by the general superintendent of police, while by statute the power of filling offices established by ordinance was vested in the mayor, with the approval of the city council. It was held that the defendant was not an officer *de jure* but that by his appointment and his assumption and discharge of the duties of the office he became an officer *de facto,* and could not escape liability for his criminal acts in that capacity by showing that he was never legally appointed to the office."

In *State* v. *London,* 194 Wash. 458, 78 P.2d 548, 115 A.L.R. 1255, the defendant was indicted for receiving a bribe in the discharge of his official duties and conviction was sustained notwithstanding that he was not formally appointed by the board of county commissioners, that he had not tendered the appropriate bond to the board for its approval, and that he had not filed the same, but had only performed all the duties of the office under claim and color of title thereto. In our opinion the reasoning in this case is sound.

It is argued that the defendant is not guilty because the evidence, taken in the light most favorable to the State, shows that McHugh always received the excess payments from the defendant at the end of the week after he had shorted the weights of the previous week and that there is no evidence whatsoever that the defendant ever gave McHugh money to influence his future exercise of the duties of weighmaster. We find no merit in this argument.

It is also argued that the indictment is fatally defective. Section 6 of division XI of the Criminal Code, (Ill. Rev.

Stat. 1955, chap 38, par. 716,) provides that every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms of the language of the statute creating the offense or so plainly that the nature of the offense may be easily understood by the jury. Niceties and strictness of pleadings are supported only where a defendant would be otherwise surprised on the trial or be unable to meet the charge or prepare his defense. *People* v. *Ostrowski,* 402 Ill. 106, 113.

We have carefully examined the indictment in this case and find that it clearly states the offense in the terms and language of the statute and specifically alleges that the money was given to McHugh, the duly qualified and acting weighmaster of the city of Freeport, with intent to influence and cause him to act with favor and partiality toward the defendant in the execution of his official duties as weighmaster of the city, to-wit: to record false weights upon goods bought by the defendant from the Structo Manufacturing Company, which said goods were weighed at the city scales and said money being given to McHugh at the office of the defendant on North Adams Street in the city of Freeport. Also, a bill of particulars was requested and furnished by order of the court and nothing is pointed out in the argument for plaintiff in error to show that he was not fully apprised of the charge against him or that he was surprised on the trial.

Finally it is argued that the court erred in giving instructions that were confusing and repugnant and that the instructions given invaded the province of the jury and were not based on any evidence. The abstract does not show at whose instance any of the instructions were given and we have repeatedly held that all instructions must be abstracted and the party tendering them identified before they are available for review. (*Sullivan* v. *Ohlhaver Co.* 291 Ill. 359, 362; *People* v. *Gawlick,* 350 Ill. 359; *People* v. *Tabet,* 402 Ill. 93.) Notwithstanding the failure to show

that the instructions complained of were given at the request of the People, we have examined all the instructions shown by the abstract and it is our opinion that no prejudicial error exists because of the instructions complained of, that the defendant has had a fair trial, that the record is remarkably free from error and that the judgment should be and is hereby affirmed.

*Judgment affirmed.*