**People of the State of Illinois, Plaintiff-Appellee, v. Jacob Bergbreiter, Defendant-Appellant.**

**Gen. No. 51,865.**

First District, Fourth Division.

June 19, 1968.

Rehearing denied July 10, 1968.

Heinze & Pritikin, of Chicago (Robert W. Heinze, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

█ This appeal is taken from a judgment of the Circuit Court of Cook County. The defendant, Jacob Bergbreiter, was indicted in October 1965, together with one Joseph Aiuppa, for the offense of bribery.* After a trial without a jury the defendant was found guilty and sentenced to a term of not less than one year nor more than two years in the State penitentiary. Aiuppa was found not guilty. In this court the defendant urges that the indictment failed to charge an offense and that the

---

* Ill Rev Stats 1963, c 38, § 33-1(a). A person commits bribery when: (a) With intent to influence the performance of any act related to the employment or function of any public officer, public employee or juror, he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept;

Penalty. A person convicted of bribery shall be fined from $1,000 to $5,000 or imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to five years, or both fined and imprisoned.

---

* See Callaghan's Illinois Digest, same topic and section number.

evidence against him is insufficient as a matter of law. The indictment was in two counts; Count II read as follows:

The Grand Jurors chosen, selected, and sworn in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths aforesaid present that commencing on or about July 2nd, 1965, A.D., and continuing till on or about August 19, 1965, A.D., at and within said County, Joseph Aiuppa, otherwise called Joseph O'Brien, and Jacob Bergbreiter committed the offense of bribery, in that they, with the intent to influence the performance of an act related to the employment and function of a public officer, promised and tendered to the said officer property which the said officer was not authorized by law to accept, to wit: the said Joseph Aiuppa and the said Jacob Bergbreiter did, commencing on or about July 2, 1965, A.D., and continuing till on or about August 19, 1965, A.D., enter into certain conversations with one Donald Shaw, a Cook County Sheriff's Police Department patrolman, a public officer, said conversation constituting a promise and a tender by the said Joseph Aiuppa and the said Jacob Bergbreiter to the said Donald Shaw of a sum of money, which money the said Donald Shaw was not authorized by law to accept, with the intent on the part of the said Joseph Aiuppa and the said Jacob Bergbreiter to influence the performance of an act related to the employment and function of the said Donald Shaw, said act being Donald Shaw's testimony in a case then pending in the Circuit Court of Cook County, Criminal Division, entitled People of the State of Illinois v. John Carr, Indictment Number 65–590, in which case the said Donald Shaw was the arresting police officer and a

witness for the prosecution, in violation of Chapter 38, Section 33–1(a), of the Illinois Revised Statutes, 1963, contrary to the Statute, and against the peace and dignity of the same People of the State of Illinois.

The defendant here argues that the indictment was not sufficient in that while it stated the offense in terms of the statute it did not include a statement that the act was done corruptly. In support of that argument the defendant relies on the previous statute relating to bribery (Ill Rev Stats 1959, c 38, § 78–81), which provided: "Whoever corruptly, directly or indirectly gives any money or other bribe, . . . with intent to influence his act. . . ." The defendant contends that without the word "corruptly" appearing in the indictment, it is not sufficient, and cites People v. Billingsley, 67 Ill App2d 292, 213 NE2d 765. In that case a jury found the defendant guilty of deceptive practices under section 17–1(d) of the Criminal Code (Ill Rev Stats 1963, c 38, § 17–1(d)), which Code provides:

A person commits a deceptive practice when: With intent to obtain control over property or to pay for property, labor or services of another, he issues or delivers a check or other order upon a real or fictitious depository for the payment of money, knowing that it will not be paid by the depository.

The defendant in Billingsley argued that the indictment was defective since in order for a criminal offense to occur, a person must issue a check to another with an intent to defraud and the complaint should make such allegation. The court pointed out that the statute does not contain any such provision, but that nevertheless the complaint, which followed the language of the statute, was fatally defective, since by the statute's generality it may embrace acts which the statute does not intend to punish; namely, where the intent of the issuer of the

check was to have the drawee hold the check until he could deposit the necessary funds in the bank. Without agreeing or disagreeing with the Billingsley court as to the case before it, we do not consider that decision to be persuasive here.

In the case before us the very wording of both the statute and the indictment carry with them an inherent charge that the act was done corruptly. In People v. Harris, 66 Ill App2d 46, 213 NE2d 588, the court held a bribery indictment to be sufficient on a charge that while the defendant was duly selected and serving as a juror he solicited money for his personal advantage, money which he was not authorized to accept, and that the solicitation was pursuant to an understanding that he would influence performance of the jury of which he was a member, to the advantage of one Magdalene Hilderbrand, from whom the payment was solicited; and that all this was in violation of chapter 38, section 33-1 of Illinois Revised Statutes. It would appear from the Harris opinion that the acts were not alleged to have been done "corruptly," although it does not appear that this point was expressly raised.

The argument of defendant that the Committee Comments to the new bribery statute, saying it is a reorganization and restatement of the old law, would require the insertion of the word "corruptly." In the case before us, even if it were considered necessary to charge that the defendant acted corruptly, a reasonable interpretation of the statement in the indictment is that the acts charged were necessarily done with a corrupt intent. In People v. Woodruff, 9 Ill2d 429, 137 NE2d 809, it was held at page 440: "Niceties and strictness of pleadings are supported only where a defendant would be otherwise surprised on the trial or be unable to meet the charge or prepare his defense." See also People v. Patrick, 38 Ill2d 255, 258, 230 NE2d 843, cited with approval in People v. Mills, 40 Ill2d 4, 237 NE2d 697.

The indictment in the case before us was sufficient.

The defendant also argues that the evidence was not sufficient to support his conviction. The case grew out of the arrest of John Carr by Officer Donald Shaw, of the Cook County Sheriff's Police, on February 20, 1965, at which time Carr offered Officer Shaw $500 to take care of his case. On July 2, 1965, the defendant went to Officer Shaw's home where he was seen and recognized by Mrs. Shaw. When learning that Shaw was not at home the defendant left and returned later in the afternoon, at which time he had a conversation with Shaw.

Officer Shaw testified that the defendant said he was "just there to see if I would go along with them. And if I so agreed, he would set up a meeting that evening with a person named Joey Aiuppa or Joey O'Brien. He stated he did not know what consideration they would give me. He was just told to tell me they would give it to me in one lump or send it monthly."

According to his testimony Shaw called his superior, Sergeant O'Mara, that same evening, then later went to the home of Chief Bielek and dictated a report of the transaction which was taken in longhand by the chief. On July 3, 1965, with a transmitter hidden on his person, Shaw went to the offices of the Home Realty Company at 9:00 p. m., where he met the defendant and Aiuppa. Detective Handley and Detective Jacobson of the Chicago Police Department Criminal Intelligence Unit were in the area to receive whatever was transmitted. Later the defendant, Aiuppa, and Shaw went to a restaurant where they talked and were seen by Mrs. Barbara Willard. Shaw testified that in that conversation Aiuppa asked if he had any objections to helping Carr get "off the hook." Shaw said he didn't see how he could help Carr since he had testified before a grand jury hearing and could not go into court and change that statement without perjuring himself. Aiuppa said he did not want Shaw to

434

commit perjury; that he would get the advice of an attorney and would give Shaw a "little statement to slip into his testimony" that would give them a loophole and Carr could be acquitted. Shaw later reported this conversation to Sergeant O'Mara, as both Shaw and O'Mara testified.

About 11:00 p. m., the defendant went to Shaw's home and gave him $500 as a down payment on the $2,000 suggested bribe. Shaw then met Sergeant O'Mara, showed him the money, then took it to Chief Bielek's home where they marked the bills, recorded the serial numbers, and placed the money in a sealed envelope which was properly preserved until the trial. Shaw's testimony with regard to this was corroborated by Officer O'Mara.

On July 18, 1965, Shaw and the defendant again met near Shaw's home at about 9:30 p. m., which meeting was corroborated by Mrs. Shaw and another witness. At that time defendant told Shaw that Aiuppa had received word from other officers that he, Aiuppa, had corrupted an unknown sheriff's policeman. Shaw later wrote a longhand report of his conversation with the defendant.

On July 19, 1965, Sergeant O'Mara gave Shaw $500 (not the same money that had been marked) so that he could show the defendant the money in case he asked to see it. At noon the defendant came to Shaw's home and asked if he still had the $500, whereupon Shaw showed him the substituted money. All this time Detective Handley was hiding in the "crawl space" in Shaw's home, trying to overhear the conversation, but was able to pick up only a few words. At 7:00 that evening the defendant came back to Shaw's home and said that Aiuppa was afraid the $500 would turn up at the Carr trial and that Aiuppa had told him "to tell me to do my best in court to help John Carr, and that I would be able to prove myself that way." Shaw testified that the defendant also told him he could have the remaining $1500

435

any time he wanted it; that it was "like money in the bank." During the latter conversation in Shaw's home Detective Handley was hiding in the bathroom and could hear the defendant and Shaw talking, and so testified, confirming Shaw's testimony in substance.

Shaw testified that he and the defendant spoke at a cocktail lounge on August 9, 1965, at which time the defendant stated that a story had got back to Aiuppa that a watch had been set up the day defendant was at Shaw's home, and that he had consulted with Aiuppa's attorney. Shaw also testified he had met the defendant two years before July 1965, and that he had never had any financial transactions with him, nor had he borrowed any money from him.

On cross-examination Shaw testified that when Chief Bielek asked him if he had had any financial dealings with the defendant he had answered:

> "I told him I had, through the Savings and Loan, with regard to a house-moving project, a partnership in a sewer and water line into my homes with other persons in the area and that Mr. Visdal, who I believe at that time was associated with Vi-Fi Realty Company had tried to tie into my sewer line and they were stopped, and that Mr. William Heise of the Savings and Loan was asking a thousand dollars per home from Mr. Visdal and there were five homes. I understood that Mr. Bergbreiter was an associate of the Vi-Fi Realty Company office. I don't know in what capacity."

Shaw denied having any other financial dealings with the defendant.

Other witnesses testified that they had seen Shaw and the defendant talking together.

The defendant testified that he worked as a real estate broker and that when some homes were sold by the State,

Shaw had asked him not to bid on three of them. The defendant agreed and purchased a fourth home; later he gave Shaw $20 to watch the vacant homes. Shortly before Christmas of 1964 he loaned Shaw $250; later Shaw asked to borrow $500, which the defendant loaned him on July 2, 1965. He denied that he gave Shaw money to influence his testimony in the Carr case, and denied being with Aiuppa.

██ ██ The evidence of Officer Shaw with reference to his transactions with the defendant is corroborated by Mrs. Shaw, Detective Handley, Sergeant O'Mara, Mr. John Moodie, and Mr. Mack Bailey. It has been repeatedly held that reviewing courts will not substitute their judgment for that of the trier of fact in merely weighing the credibility of witnesses when the testimony is conflicting and it is also held that a trial court decision will not be reversed on appeal unless the evidence is "so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to justify the court in entertaining a reasonable doubt of the defendant's guilt." People v. Woodruff, 9 Ill2d 429, 137 NE2d 809.

██ A reading of the record before us indicates that the evidence is amply sufficient to support defendant's conviction.

The defendant argues that if the court sustained Aiuppa's motion for judgment of acquittal, it also should sustain the motion of the defendant. This does not follow. In this appeal we are not concerned with the propriety of the court's action regarding Aiuppa.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.