THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE MUERSCH (IMPLEADED), Defendant-Appellant.

(No. 55177;

First District—April 10, 1972.

Manuel Rosenstein, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Henry A. Hauser, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

George Muersch (hereinafter "defendant") and Joseph Davila were found guilty at a bench trial of the crime of bribery; each was placed on probation for a period of two years. Defendant appeals, contending that he was not proven guilty beyond a reasonable doubt and that he did not receive competent assistance of counsel at trial. (Joseph Davila is not involved in this appeal.)

Miss Terry Tracy, aged 16, testified for the People that on the evening of September 4, 1967, she was operating an automobile owned by her father, in the vicinity of 109th Street and South Park Avenue in Chicago. (We note that the name of South Park Avenue has since been changed to Dr. Martin Luther King, Jr., Drive.) Seated as passengers in the automobile were Miss Joanne Lynch and William Fayhe, both teen-agers. Miss Tracy testified that as she was proceeding along South Park Avenue, she observed a police squad car pass her vehicle, traveling in the opposite direction, and she also noticed that her vehicle was exceeding the posted speed limit. The witness testified that she was uncertain whether the police vehicle would give chase and that she attempted to evade the police car by executing a turn into an alley near 109th Street. She stated that her vehicle was halted in the alley by the police vehicle seen earlier on South Park Avenue but which was then proceeding through the alley from the opposite direction toward the witness' vehicle.

Miss Tracy testified that two police officers, later identified as defendant and Joseph Davila, alighted from the police vehicle and approached the witness' automobile, defendant walking to the driver's side and Davila to the passenger's side. Miss Tracy stated that the defendant requested her operator's license, which she handed to the officer, and then engaged the witness in a discussion as to whether traffic citations should be issued for exceeding the posted speed limit and for attempting to evade a police officer. The witness testified that she asked the defendant not to issue her a citation for the reason that her father owned a driver's training school and that he would be angry if he learned that his daughter received a traffic citation. While the defendant was conversing with the witness, Davila engaged the witness' two companions in conversation.

Miss Tracy testified that defendant returned to the police vehicle where he was joined by Davila and that the two officers appeared to engage in conversation. They then returned to the witness' vehicle and defendant stated, "I don't like anything my partner said, but I will talk to you alone about it." The witness stated that one of the two officers told the witness to drive her friends home and thereafter to follow the

officers in her vehicle. The witness testified that defendant retained her operator's license as she drove off.

Miss Tracy testified that as she was driving Miss Lynch and William Fayhe to their respective residences, the defendant and Davila followed in the police vehicle. Miss Tracy first drove Miss Lynch home and then proceeded to Fayhe's home, at which point she asked Fayhe to stay with her because she was afraid. She stated that Fayhe told her that she had no choice but to follow the officers because they had her operator's license. The witness testified that after Fayhe alighted from her vehicle, she followed the police car a short distance and brought her automobile to a stop near an alley immediately behind the police car. She stated that defendant alighted from the police vehicle, walked to her automobile and told the witness, "Not here. There's too many neighbors." Defendant then instructed the witness to again follow the police vehicle.

Miss Tracy testified that she followed the police car to a secluded area near the Secretary of State's Office at 98th Place and South Park Avenue. She stated that she followed the officers in her vehicle about two blocks to the east of South Park Avenue along 98th Place, to a point where the road is interrupted by a railroad embankment, where both vehicles were brought to a stop. Defendant alighted from the police vehicle and told the witness to turn off the lights of her car and to enter the police car, which she did. A ten-minute conversation then ensued in the police vehicle between the witness and the officers relating to whether the witness should be issued a traffic citation, during which one of the officers stated, "If we take care of you, you have to take care of us." Miss Tracy testified that she stated to the officers that she would "take care" of them, and that she alighted from the police vehicle and went to her automobile where she procured two ten-dollar bills from her wallet. Miss Tracy testified that she returned to the police vehicle and handed the money to Davila, who in turn showed the money to the defendant. The witness stated that defendant thereupon stated to her, "We don't want your money. You're old enough to know what we want," after which he turned to Davila to determine the age of the witness.

Miss Tracy testified that she became angry at that point and demanded that the officers take her to the police station. She stated that the officers then told her to follow their vehicle, and the two vehicles proceeded south on South Park Avenue to 103rd Street, where the officers turned easterly and the witness turned westerly. When the witness arrived home, she related the incident to members of her family. She testified that she identified the defendant and Davila at police headquarters during roll call the following day. The twenty dollars given to the officers was not returned to the witness.

Miss Joanne Lynch testified for the People and substantially corroborated Miss Tracy's testimony concerning the events of the evening of September 4, 1967, prior to her being driven home by Miss Tracy at the suggestion of the officers. She further testified that she identified the defendant and Davila at the police station during a roll call on the day following the incident.

It further appears from the People's evidence that the father of Miss Tracy was a former Chicago police officer, and that the father of William Fayhe was on the Chicago police force at the time of the incident.

The testimony of the defendant and Joseph Davila was substantially the same. They testified that after they stopped Miss Tracy's automobile near 109th and South Park Avenue, they learned that Miss Tracy's father was a former Chicago police officer, and that the father of William Fayhe was then a police officer employed by the City. There was testimony that William Fayhe had been arrested in the past by Davila for disorderly conduct and that he smelled of alcohol at the time Miss Tracy's vehicle was stopped. The officers testified that they conferred with each other near their vehicle and determined to give Miss Tracy and William Fayhe "a pass." Miss Tracy's operator's license was thereupon returned to her by defendant.

The officers testified that the Tracy automobile drove off and was followed by the police vehicle until the two passengers were driven home. The officers gave as their reason for following the Tracy vehicle that they were concerned about the safety of Tracy's passengers, "knowing that Fayhe's father was a police officer * * *" and since there was reason "to believe that Mr. Fayhe had been drinking." They further testified that as they drove off after Fayhe was left at his residence by Miss Tracy, they noticed the Tracy vehicle following their vehicle. In order to verify whether or not the Tracy vehicle was following them the officers drove into the area of 99th Street and South Park Avenue where they brought their vehicle to a stop. The Tracy vehicle stopped behind the police vehicle, and Miss Tracy alighted and pleaded with the officers not to tell Fayhe's father that Fayhe had been drinking or that she had been stopped for exceeding the speed limit.

Both officers denied taking money from Miss Tracy, or requesting that she follow their vehicle after the original confrontation in the alley off 109th Street and South Park Avenue.

Defendant has raised sixteen "issues presented for review" in his brief, fifteen of which relate to the single question of the sufficiency of the People's evidence. The sixteenth "issue" relates to whether defendant was competently represented by counsel at trial.

■ It is clear from the foregoing summary that sufficient evidence

was adduced by the People from which the trier of fact could find the defendant guilty beyond a reasonable doubt of the crime of bribery. The defendant was aware of the bribery solicitation, actively participated therein, suggested that a matter which he "didn't like" be discussed alone with Miss Tracy and operated the police vehicle to the secluded area near the Secretary of State's Office on South Park Avenue, gave Miss Tracy instructions with regard to the meeting place, was shown the money given to Davila and the like. The record is clear that defendant actively engaged in the solicitation of and acceptance of the money from Miss Tracy, although Davila physically accepted the money, that he fully intended to participate and that he was directly involved with Davila. The evidence supports the finding that defendant was guilty of the crime of bribery as charged in the indictment. See *People v. Clemons*, 26 Ill.2d 481 involving circumstances strikingly similar to those in the case at bar.

Defendant's contention that he did not receive the benefit of effective assistance of counsel is without merit. He argues that such incompetency is evidenced by his trial counsel's failure to demand a separate trial apart from Davila and to recommend the engagement of separate trial counsel, inasmuch as the record allegedly shows that Davila was the sole participant in the bribery. He further argues that his attorney was adjudicated mentally incompetent eleven months after the trial as indicative of incompetence at the time of trial.

■■■ Contrary to defendant's contention, the record reveals that he and Davila received a good and lawyerlike representation by their trial counsel. Defendants gave substantially the same account of the incident, both denying taking money from Miss Tracy, soliciting a bribe, or requesting her to follow their vehicle to the secluded area where the money allegedly changed hands. The defense of each man was similar; consequently there was no sound basis upon which a motion for a severance could be predicated. Persons indicted together will be tried together unless, in the sound discretion of the trial court, their positions are so antagonistic that a fair trial can be had only by separate trials. (*People v. Earl*, 34 Ill.2d 11; *People v. Yonder*, 44 Ill.2d 376.) There were no grounds upon which trial counsel could have based a motion for a severance.

■■ The matter raised in defendant's brief, relative to the adjudication of his trial counsel's mental incompetency eleven months after the trial of the case was not presented to the trial court. With regard to defendant's contention that his trial counsel, and not the substitute sent by trial counsel, should have presented the post trial motions to the court, it need only be said that the substitute counsel explained to the trial

judge that trial counsel was engaged in another trial at the time, that trial counsel gave to the substitute counsel the "necessary information" upon which to base the post trial motions and that substitute counsel was present during part of the trial. The record shows that defendant was given able and competent representation by his trial counsel.

This Court is in agreement with the basic principles of law urged by defendant in the cases cited in his brief which, however, are not applicable to the factual situation presented in the case at bar. See *e.g.*, *People v. Mosby*, 25 Ill.2d 400; *People v. Bergbreiter*, 97 Ill.App.2d 429; *Lamb v. People*, 96 Ill. 73; *Stuart v. People*, 73 Ill. 20; *People v. Hardt*, 329 Ill.App. 153.

For these reasons the judgment is affirmed.

GOLDBERG, P. J., and LYONS, J., concur.