The People of the State of Illinois, Plaintiff-Appellee, *v.* Thomas A. Gokey, Defendant-Appellant.

(No. 72-97;

Second District—February 5, 1973.

*Rehearing denied March 6, 1973.*

Richard H. Devine, of Chicago, for appellant.

William J. Cowlin, State's Attorney, of Woodstock, (John Gorby, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A jury found the defendant, Thomas A. Gokey, guilty of reckless driving, unlawful use of a weapon and bribery. He was sentenced to serve concurrent terms of one year for the weapons offense, 90 days for reckless driving and 2 to 5 years for bribery. His appeal was transferred here by the Supreme Court.

At 3:00 A.M., April 8, 1969, two sheriff's policemen on patrol in their squad car, observed a vehicle pass their car at a speed in excess of the limit. They stopped the auto and Sergeant Meyers recognized the driver-defendant, as a man he had known for thirty years. The driver was warned that he had been speeding and was advised to slow down, after

which he drove away. Shortly thereafter, the same officers observed defendant's vehicle speeding, crossing the center line, and passing in a no-passing zone. Defendant was again stopped.

Sergeant Meyers informed defendant he was going to be arrested. Both officers testified that defendant then stepped out of his car and, as he did so, "something" was heard to hit the pavement. Looking down, a gun was observed at defendant's feet. He was placed in the squad car and transported to the police station to be charged with reckless driving and unlawful use of a weapon.

Sergeant Schalz, the shift sergeant, testified that after arriving at the station, defendant queried, "* * * you're not going to let them put me in jail, are you?"; that defendant then stated he would give Sergeant Schalz $50 to avoid being jailed; that after the sergeant's refusal, defendant offered $500, then $5,000 and that, finally, defendant offered all the money he was carrying, which totalled $7,261.

Defendant produced evidence that he suffers from diabetes and must take daily dosages of insulin; that a diabetic, taking insulin, must eat three regular meals without which he can go into insulin shock; that persons suffering from insulin shock become, in a sense, intoxicated; that their behavior is bizarre, they may have unusual ideas, faulty memory and lose touch with reality.

Defendant testified that during the morning of April 7, 1969, he received a shot of insulin from his doctor, self-administered another later in the day, but had nothing to eat during the afternoon or evening. In the early evening, he drove from Woodstock to Chicago where he met with his father and received $7,000 in cash to be used in a business venture. He stated that, anticipating the large amount of money he would be carrying, he took his gun and that on the way back from Chicago, the gun was on the floor of the driver's side of the car. Enroute home, he stopped, intending to get something to eat but found the restaurant closed; he began to feel ill, had the chills and perspired; he remembered both times he was stopped by the police but did not remember anything that happened from the time of his arrest until he woke in jail later that morning.

■■ At the outset, the State confesses error and concedes that the complaint for reckless driving (upon which defendant was tried) was constitutionally insufficient and void. (See, *People v. Griffin*, 36 Ill.2d 430 (1967).) The conviction for reckless driving is therefore reversed.

The remaining contentions are (1) the State failed to prove concealment, an essential element of the weapons charge, (2) the bribery indictment was void, (3) defendant was not proven guilty of bribery beyond a reasonable doubt, and (4) the sentences should be reduced.

The unlawful use of weapons statute, Ill. Rev. Stat. 1967, ch. 38, sec. 24—1(a)(4), which defendant allegedly violated, provides:

"A person commits the offense of unlawful use of weapons when he knowingly carries concealed in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver or other firearm."

Defendant alleges that the court erred in not directing a verdict for him at the close of the State's case because there was no evidence of concealment of the weapon.

Sergeant Meyers testified that "a gun came out of his clothing somewhere, I don't know exactly where, and it landed right by his foot." He admitted, however, that the gun first came to his attention when he heard it hit the pavement. Deputy Fair also testified that he did not observe the gun until it hit the pavement; that, when he looked down, part of the gun was "on his [defendant's] shoe, partially covered by the pants * * *" and that the gun subsequently fell out. Both officers demonstrated to the jury the exact position, in relation to the defendant, in which they first observed the gun.

■■ We find that there was sufficient uncontroverted evidence, both by testimony and demonstration, from which the jury could conclude that the gun fell through defendant's trousers, and that such conclusion by the jury would establish the requisite element of concealment. (*People v. Ostrand*, 35 Ill.2d 520, 533 (1966).) Defendant's cited case *People v. Davis*, 1 Ill.App.3d 1078 (1971), is inapposite because there the police officer conceded that at no time were the guns concealed. The trial court did not err in denying defendant a directed verdict of acquittal on the charge of unlawful use of weapons.

The bribery indictment in question stated:

"That on April 8th, 1969, in McHenry County, Thomas A. Gokey committed the offense of Bribery in that he, the said Thomas A. Gokey, promised and tendered to Sergeant Matt Schalz, a Deputy Sheriff of McHenry County, a monetary sum of $5,000, which Sergeant Matt Schalz is not authorized by law to accept, with the intent to influence Sergeant Matt Schalz in the performance of his duties as a Deputy Sheriff of McHenry County * * *."

Defendant alleges that the indictment is insufficient to charge an offense because it fails to set forth exactly which official duty defendant had purportedly attempted to influence. It is argued that, the official duties of a deputy sheriff being numerous, a valid indictment must set forth the exact *quid pro quo* for the defendant's money.

■■ The rule concerning the sufficiency of indictments is set forth in

*People v. Grieco,* 44 Ill.2d 407, 409-410 (1970), and was very recently reiterated in *People v. Aud,* 52 Ill.2d 368, 370 (1972):

> " '[A]n indictment phrased in the language of the statute creating the crime is sufficiently certain where the words of the statute so particularize the offense as by their use alone to notify the accused of the precise offense charged against him. [Citations omitted.] But where the statute does not specifically define the crime or does so only in general terms, some act showing an alleged violation of the statute must be averred.' "

The bribery statute (Ill. Rev. Stat. 1967, ch. 38, sec. 33—1 (a)), provides a person commits bribery when:

> "(a) with intent to influence the performance of any act related to the employment or function of any public officer, public employee or juror, he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept;   *   *   *."

We have researched other Illinois cases which deal with the validity of bribery indictments: *People v. Woodruff,* 9 Ill.2d 429, 440 (1956); *People v. Bergbreiter,* 97 Ill.App.2d 429, 432-434 (1968); *People v. Harris,* 66 Ill.App.2d 46, 48 (1966). In each, however, the official duties sought to be influenced were fully described in the indictment but the issue of whether such particularization is essential for a valid indictment was not raised or discussed. We therefore turn for guidance to foreign jurisdictions.

The Court of Appeals of Maryland, in *Cunningham v. State,* 59 A.2d 337 (1948), was presented with the identical issue. There, the indictment stated that money was given to a police officer "in order to influence (him)   *   *   * in the performance of his official duties", and the Maryland bribery statute in effect at that time was very similar to the Illinois statute. The court found no merit to defendant's argument that the indictment was insufficient because it failed to set forth the official acts sought to be influenced.

> "Here the statute forbids the bribing of an officer to influence him in the performance of his official duties. The essence of the crime is the passing of money to the officer to influence the officer in the performance of his official duties   *   *   *. The indictments are plainly laid in the words of the statute and are sufficient to inform the accused of the charge against him." 59 A.2d at 339.

In *Livingston v. Commonwealth,* 36 S.E.2d 561 (1946), the Supreme Court of Appeals of Virginia had before it a bribery indictment similar to that of the instant case. While there the indictment was held sufficient,

it does not appear to have been challenged for the same reason as the indictment in *Cunningham* and the case at bar.

In *State v. Kearns,* 129 N.E.2d 543 (1955), the Ohio Court of Common Pleas had before it an indictment charging, in substance, that a prosecuting attorney accepted money to influence him in performance of his official duties. The court held the indictment sufficiently set forth all of the essential elements of the crime of bribery.

In *State v. Greer,* 77 S.E.2d 917 (1953), the Supreme Court of North Carolina held a similar indictment void because it did not contain definite and particular allegations as to the official duties intended to be influenced. However, there the applicable statute was very general and dissimilar from the Illinois statute and the statutes pertinent in *Cunningham* and *Livingston.*

■■ We find the rationale of *Cunningham* controlling and hold the indictment legally sufficient in that, couched in the language of a statute that particularizes the offense, it duly notifies the accused of the crime charged against him.

Defendant alleges that he was not proven guilty of bribery beyond a reasonable doubt, arguing, by inference, that insulin shock rendered him incapable of the requisite intent.

The fact that defendant offered the sergeant money is not denied. Evidence bearing on his claimed condition of insulin shock, however, was not corroborated and was, at least in part, contradicted. Defendant alleged that on the morning of the occurrence he had received a long lasting insulin shot from his doctor; his doctor testified that no such shot was administered on that date. Defendant claimed that just prior to the incident he felt ill, that he remembered nothing from the time of his arrest until he woke next morning in jail. Defendant emphasizes the fact that the officers, who had known the defendant, found his behavior other than normal. A study of the record, however, indicates that the officers found him abnormal in that he was acting belligerent. However, the officers also testified that his speech was coherent, that he did not act confused, appear physically ill or walk improperly.

■■ Called to give an expert opinion on whether defendant might have been suffering from insulin shock, two physicians (one a State's rebuttal witness on cross-examination) rendered their opinions that the hypothetical person was suffering from insulin shock. However, their opinions were based solely on facts alleged by the defendant himself. The weight of the evidence and the credibility of witnesses are questions which must be resolved by the jury. If the jury chose to disbelieve defendant's self-serving statements, the opinions of the experts would have

no bearing. We find the evidence sufficient to prove defendant guilty of bribery beyond a reasonable doubt.

Defendant finally argues that all of the sentences imposed were excessive. This court finds excessive only the two to five year sentence for bribery.

The statute (Ill. Rev. Stat. 1967, ch. 38, sec. 33—1), provides that a person convicted of bribery shall be fined from $1000 to $5,000, or imprisoned in a penal institution other than the penitentiary for not more than one year or in the penitentiary for one to five years, or both fined and imprisoned.

We have examined the recent bribery cases presented to Illinois reviewing courts and, although the issue of excessive sentence was not raised, we note that in each, the penalty was less severe than that given defendant herein: *People v. Muersch,* 4 Ill.App.3d 1003 (1972) (policeman convicted of bribery received two year probation); *People v. Fleming,* 50 Ill.2d 141 (1971) (policeman convicted of bribery *and* official misconduct received five year probation, the first six months to be served in the House of Corrections under a work release program); *People v. Gralewski,* 270 N.E.2d 566 (1971) (policeman convicted of bribery *and* official misconduct given two years probation and fined $200).

In *People v. Davis,* 130 Ill.App.2d 1047 (1971), where a conviction of bribery resulted in a sentence of three years to three years, one day, and a fine of $1000, the court reduced his sentence to that of one year to one year and a day, and quashed the $1000 fine, despite the fact that the defendant had a prior record of four felony convictions.

In view of the aforementioned cases and with consideration of the previous record of defendant herein,

"* * * We believe the sentence * * * is greatly at variance with the purpose and spirit of the law. This is not a situation of a well planned and thought out crime." 130 Ill.App.2d at 1051-1052.

Defendant's bribery sentence is reduced to a term of one to three years, the same to be served concurrently with the one year sentence for unlawful use of weapons.

Reversed in part; affirmed in part as modified.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.