ROBERT B. MONGE *et al.*, Plaintiffs-Appellants, v. THE CITY OF PEKIN *et al.*, Defendants-Appellees.

Third District   No. 3—92—0410

Opinion filed May 10, 1993.—Modified on denial of rehearing June 29, 1993.

Thomas E. Leiter, of The Leiter Group, of Peoria (Sandra J. Birdsall, of counsel), for appellants.

Moehle, Swearingen & Associates, Ltd., of Pekin (Valerie Moehle Umholtz, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

Robert B. Monge and Norma J. Monge appeal from the dismissal of their complaint against the City of Pekin, the mayor and three city commissioners for breach of contract and tortious interference with the contracts and business expectancy of plaintiffs. We reverse the order of dismissal.

Plaintiffs alleged that the Pekin city council on April 15, 1991, approved the purchase of certain real estate owned by plaintiffs in the sum of $370,000 and also approved a contract with plaintiffs for private development of certain downtown property. Plaintiffs also alleged that the city entered into the written contracts but subsequently refused to perform under the contracts. Plaintiffs further alleged that Robert Monge is in the business of real estate development and had undertaken a project to redevelop downtown Pekin pursuant to a development agreement with the city in 1986, in furtherance of which a tax increment financing district (TIF) was adopted by the city. In accordance with the downtown plan, Monge purchased certain property for the city with the agreement that the city would purchase the property from him using TIF bonds.

Additionally, plaintiffs alleged that the contracts approved and entered into on April 15, 1991, were the culmination of four years of work to bring about construction of a new office building and other redevelopment. Plaintiffs also alleged that the city council acted improperly on April 15, 1991, in holding a second meeting that night and voting by resolution to rescind the ordinances which effected plaintiffs' final agreement with the city.

Defendants' motion to dismiss asserted that the alleged contracts between the city and Monge were *ultra vires* and were nullified by resolutions rescinding and repealing the contract on April 15, 1991, and by ordinances approved on August 26, 1991. Attached to the motion were copies of city council minutes for April 15 which disclose that a regular meeting of the city council was called to order by Mayor Larry W. Homerin at 6:30 p.m. and that several ordinances were approved, including ordinances Nos. 1804, 1805, and 1806. The

minutes indicate that the council adjourned "*sine die*" (final adjournment) at 6:55 p.m.

Additional minutes of the same date show that a regular meeting of the city council was called to order by Mayor Donald C. Williams at 7:03 p.m. and that the mayor presented the city clerk with a copy of the abstract of votes of the April 2 consolidated election. The council then approved a motion to receive and file the oaths and bonds of the new council members. After approving appointment of various officials, the council then approved resolutions rescinding and repealing ordinances Nos. 1804, 1805, and 1806, among others. Thereafter, the council approved a motion to table those ordinances indefinitely.

In granting the motion to dismiss, the trial court held that the terms of the former city council members expired before the first regular or special meeting of the council after the April 2 election and, therefore, that the actions taken on April 15 approving the contracts with plaintiffs were without authority. The court dismissed the counts involving the contract with prejudice, and plaintiffs filed a motion to reconsider. Defendants responded to the motion with exhibits and affidavits disclosing that the oaths and bonds of the newly elected mayor and commissioners were approved by the clerk of the circuit court, filed with the county clerk, and given to the city clerk, all on April 10, 1991.

Plaintiffs then responded with affidavits indicating that the former mayor and commissioners had been sworn into office on May 4, 1987, and had held office continuously until adjournment of the city council on April 15, 1991. Plaintiffs also filed minutes of the Pekin city council for May 4, 1987, and May 2, 1983, revealing that it was customary for the old council to meet, act upon any old business, and then adjourn *sine die*, with the new council convening immediately thereafter. Each time, the city clerk administered the oath of office to the commissioners and mayor, and then action was taken concerning the appointment of officers and other business.

The trial court denied the motion to reconsider, ruling that the term of the old city council members had expired prior to April 15. Plaintiffs then perfected this appeal.

The determinative issue on appeal is whether the actions of the outgoing mayor and city council in adopting ordinances Nos. 1804, 1805, and 1806 and in signing the contracts were valid as to plaintiffs. One of the statutory provisions at issue is in section 3—2—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1991, ch. 24, par. 3—2—2 (now 65 ILCS 5/3—2—2 (West 1992)), which applies generally to the election of municipal officers, as follows:

"§3—2—2. The schedule, manner of conducting, voting at, and contesting municipal elections shall be as provided in the general election law.

The terms of elected municipal officers shall commence at the first regular or special meeting of the corporate authorities during the month of April following the proclamation of the results of the regular municipal election at which such officers were elected, except as may otherwise be provided by ordinance fixing the date for inauguration of newly elected officers of a municipality. No such ordinance shall fix the time for inauguration of newly elected officers later than the first regular or special meeting of the corporate authorities in the month of May following such election."

Article 4 of the Illinois Municipal Code applies to those municipalities, including the City of Pekin, having a commission form of government. Section 4—4—1 provides that, before entering upon the duties of office, all officers elected under article 4 shall take the oath prescribed by the constitution and shall file the subscribed oath with the municipal clerk. Prior to an amendment effective September 26, 1991, section 4—4—2 required the mayor and commissioners to execute bonds of at least $3,000 with the bonds to be approved by the circuit court of the county in which the municipality is located and to be "filed with, recorded, and preserved by the county clerk of the specified county." (Ill. Rev. Stat. 1987, ch. 24, par. 4—4—2.) (The amendment to section 4—4—2 requires these bonds to be filed with the municipal clerk.)

Section 4—3—4 (65 ILCS 5/4—3—4 (West 1992)) provides: "Except as otherwise provided in this article, the mayor and commissioners elected under Section 4—3—1 shall hold their respective offices for the term of 4 years and until their successors are elected and qualified." Also of note is a provision in section 3—1—1 of the Municipal Code that article 4 controls in the event of conflict between the provisions of article 3 and article 4.

Plaintiffs contend that, as of 6:30 p.m. on April 15, 1991, the new mayor and commissioners had not yet qualified since the results of the election were not proclaimed and their oaths and bonds were not filed with the municipal clerk until after the 7:03 p.m. council meeting was called to order. Therefore, the mayor and commissioners elected in 1987 were still in office and the ordinances approved by them on April 15 were valid.

Defendants' position is that their terms of office began "at the first regular *** meeting" of the city council following April 10, 1991,

the date they qualified for their respective offices by executing and filing their oaths and bonds as required by sections 4—4—1 and 4—4—2 of the Code. In other words, their terms began at 6:30 p.m. April 15, 1991, and the actions of the former mayor and commissioners were a nullity.

Comparing the pleadings and affidavits filed in this cause with the applicable statutory provisions leads to the conclusion that defendants have not established that defendants' term of office commenced at 6:30 p.m. on April 15, 1991. The defendants' bonds were approved by the clerk of the circuit court, not by the circuit court as required by statute, and minutes of the 7:03 p.m. council meeting on April 15 indicate that the oaths and bonds were accepted for filing at that time, in keeping with the established custom of past years. At best, defendants have demonstrated a question of fact as to whether the old mayor and council were *de jure* officers with authority to enact the ordinances in question at 6:30 p.m. on April 15, 1991. The motion to dismiss should not have been granted.

Furthermore, as plaintiffs point out, even if the mayor and commissioners were not serving *de jure*, the facts alleged indicate that they were *de facto* officers, and their acts were binding as to plaintiffs. The applicable rule was set forth in *Mank v. Board of Fire & Police Commissioners* (1972), 7 Ill. App. 3d 478, 483, 288 N.E.2d 49, 52:

> "As was said in *People v. Woodruff*, 9 Ill. 2d 429, 137 N.E.2d 809, on page 437, 137 N.E.2d on page 813:
>
> · . 'It is a well settled principle that the acts of officers *de facto* are as valid and effectual where they concern the public or the rights of third persons as though they were officers *de jure* and that the title to an office cannot be decided in a collateral suit but only in a direct proceeding for that purpose.' "

An officer performing the duties of an office under color of title is an officer *de facto*, and such acts are valid so far as third parties who have an interest in them are concerned. (*People ex rel. Chillicothe Township v. Board of Review of Peoria County* (1960), 19 Ill. 2d 424, 167 N.E.2d 553.) Here the mayor and council were performing the duties of their respective offices at 6:30 p.m. and were doing so under color of title in that their successors had not yet assumed office. Thus, the old officers continued to hold office, at least *de facto*, when they met in formal session at 6:30 p.m. In fact, the terms of the mayor and commissioners did not expire, according to section 4—3—4 of the Municipal Code, until four years from the date they took office,

*i.e.*, four years from May 4, 1987. This fact, too, gave color of title to their actions as city officers.

We conclude that the trial court erred in dismissing plaintiffs' complaint. Accordingly, we reverse the order of dismissal and remand for further proceedings.

Reversed and remanded.

STOUDER and LYTTON, JJ., concur.