(No. 37055.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEWIS ROSENFELD, Plaintiff in Error.

*Opinion filed September 28, 1962.*

474

Garman, Greanias & Owen, of Decatur, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Harrison J. McCown, State's Attorney, of Tuscola, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

The grand jury of Douglas County indicted the defendant, Lewis Rosenfeld, together with Marvin Goldfarb and Barry Goldberg, upon charges that they unlawfully "possessed or had under their control," a narcotic drug, marihuana. Goldberg and Goldfarb pleaded guilty, and when the defendant's case came on for trial their applications for probation were pending. The defendant was found guilty after a jury trial, and was sentenced to imprisonment in the penitentiary for not less than two nor more than ten years. On this writ of error he asserts that the indictment was defective, that he was prejudiced by erroneous rulings on the admission and exclusion of evidence, that an erron-

eous instruction was given, that the conduct of the trial judge was improper and that the evidence did not establish his guilt beyond a reasonable doubt.

We consider first the validity of the indictment returned against the defendant and his companions. It charged, in the disjunctive, that they had "possessed or had under their control" marihuana. The defendant urges that it was therefore void for uncertainty and that the trial judge erred in denying his motion to quash it. The use of the disjunctive "or" may indeed render an indictment defective if it deprives the defendant of notice of the specific nature of the charge made against him, or impairs the certainty that is requisite if double jeopardy is to be avoided. (*The Confiscation Cases* (1873) 87 U.S. 92, 104, 22 L. ed. 320.) But the fact that two words, intimately associated in their meaning, are stated disjunctively, does not render an indictment uncertain. *Blemer* v. *People,* 76 Ill. 265; *People* v. *Farrell,* 349 Ill. 129.

In the context of various statutes, it has been held that the terms "possess" and "have under control" are synonymous, or so nearly so that their disjunctive use does not give rise to uncertainty. (*Kennedy* v. *State,* 171 Neb. 160, 105 N.W.2d 710. *Phillips* v. *State,* 154 Neb. 790, 49 N.W.2d 698; *Smith* v. *R. F. Brodegaard & Co.* 77 Ga. App. 661, 49 S.E.2d 500.) In urging that we should hold otherwise, the defendant relies on *United States* v. *MacKenzie,* 170 F. Supp. 797 (D. Me. 1959). In that case it was assumed without discussion that the terms "possession, custody or under control" are necessarily separate and distinct, and a disjunctive indictment was held bad. But our own decisions have construed the word "possess" so broadly (*e.g., People* v. *Fox,* 24 Ill.2d 581; *People* v. *Jackson,* 23 Ill.2d 360; *People* v. *Mack,* 12 Ill.2d 151,) that there can be no sharp delineation between "possessing" and "having under control." As the defendant points out in arguing another proposition, "* * * the touchstone is control.

It is the party who has control who has possession." The indictment fairly apprised the defendant of the charges against him and obviated any danger of double jeopardy, and the motion to quash it was properly overruled.

The defendant and his companions were apprehended under unusual circumstances. The automobile in which they were riding was involved in an accident, and thereafter marihuana was discovered in the car by the State police. Goldberg and Goldfarb, who lived in New York, had driven to Dayton, Ohio, by prearrangement, to meet the defendant. Goldfarb testified that in the course of a telephone conversation with the defendant during which the meeting was arranged, the defendant stated that he had heard about a field of marihuana from a friend of his. The three men then drove to Muncie, Indiana, where they had arranged to meet one Barry Edelson, a friend of the defendant's, who lived in Decatur, Illinois. Goldfarb testified that the defendant identified Edelson as the source of his information about the field of marihuana. Edelson did not meet them at Muncie, and the three then drove on to Edelson's home in Decatur, arriving there about 10:30 P.M.

With Edelson driving, the four men went at once to a highway outside of Decatur where a patch of marihuana was growing along the roadside. There Edelson, Goldberg and Goldfarb got out of the car and picked some marihuana plants. The defendant, who had driven from Muncie to Decatur, did not get out of the car at that point. The other three men returned to the car, separated the plant from the stalk, and placed some of the marihuana in a cottage cheese container and the balance in a grocery bag, or shopping bag. They then took Edelson home and the defendant and his two companions left at once on their return trip.

Not far from Decatur they were involved in an automobile accident, as a result of which all three were hospitalized. The defendant testified that at the time of the accident Goldberg went back to the car, secured the paper

bag and disposed of its contents while they were waiting in the emergency room at the hospital. State trooper Donald Bierman testified that he examined the automobile after the accident and noticed the cottage cheese container and its contents but did not know what it was. Goldfarb wanted to ascertain the extent of the damage to the car and Bierman drove him to the garage to which it had been taken. His suspicions were aroused when Goldfarb took the cottage cheese container from the glove compartment, climbed into the back seat and furtively attempted to push its contents under the seat. Bierman retrieved the contents and took Goldfarb into custody. The arrest of Goldberg and the defendant followed. Analysis of the substance established that it was marihuana.

The most significant of the defendant's objections to the rulings of the trial court upon the admission of evidence relates to a statement that he made in the presence of the State's Attorney and the sheriff on the day that he was arrested. The statement was reduced to writing, but the defendant did not sign it. In it the defendant said that he and his two companions had smoked marihuana in his apartment in Dayton, and that while they were in Decatur the three men and Edelson smoked two pipes of marihuana which Edelson supplied. The statement also contained the following: "We planned to meet Barry Edelson in Muncie, Indiana, and we drove to the latter city but he was not there. We originally planned just to meet him there to visit with him. When we arrived in Muncie and he was not there we called him and were informed that he had access to some marihuana so we decided to drive to Decatur to see him and to get the marihuana."

The defendant contends that the references to the smoking of marihuana and to the purpose of the trip to Decatur, were unrelated to the charge of possession, and he argues that it was prejudicial error to admit them. We do not agree. While it was undisputed that there was marihuana

in the car in which the three men were riding, it has been the defendant's position, both upon the trial and in this court, that its possession was not brought home to him. Evidence concerning the purpose of the trip to Decatur was relevant to show a common design or plan from which, at the least, the jury could infer the defendant's guilt as an accessory before the fact. And evidence of the joint use of marihuana by the three men, during the course of a joint expedition to obtain an additional supply, was relevant because it tended to characterize their possession as joint possession.

The defendant's statement was thus properly admissible in evidence against him, and despite defendant's contention to the contrary, the record shows that it was actually admitted in evidence in the course of the presentation of the case for the prosecution. Due apparently to an oversight on the part of the prosecutor, however, the statement was not read to the jury at that time and when he sought leave to read it to the jury immediately after the prosecution's case had been closed, permission to do so was denied. Thereafter the defendant testified, and on cross-examination he was asked several questions about the statement and about the use of narcotics by the three men both in Dayton and in Decatur. The defendant objected vigorously to this cross-examination and in this court he urges that it was prejudicial error to overrule his objections. During the prosecution's case on rebuttal the defendant's statement was read to the jury.

Since, as we have held, the admissibility of the defendant's statement was not limited to its use for impeachment purposes, the issues that the defendant raises concern only a deviation from the normal order of proof. Such a deviation may result in prejudice so serious as to require the reversal of a conviction. (See *People* v. *Crump,* 5 Ill.2d 251.) In the present case, however, it does not appear that the defendant was prejudiced. He could hardly have been sur-

prised, since the written statement had been admitted in evidence as an exhibit, and as the trial actually developed, he was afforded a full opportunity to deny or explain its prejudicial aspects. See *Tucker* v. *People,* 122 Ill. 583, 593; *People* v. *Cunningham,* 300 Ill. 376, 380.

On direct examination of the defendant the following occurred:

> "Q. At anytime from then on did you consider that cottage cheese container to be your property?
>
> Mr. McCown: I object to what he considered.
>
> The Court: It will be sustained.
>
> Q. Was it your property?
>
> Mr. McCown: To which we object. Calls for a conclusion of the witness.
>
> The Court: Sustained."

The defendant contends that the court erred in sustaining objections to these questions. He relies upon those cases that have held that the defendant in a criminal case may testify directly as to his state of mind when his intention, motive, or belief is in issue. (See *People* v. *Spranger,* 314 Ill. 602, 609; *People* v. *Biella,* 374 Ill. 87, 89; King & Pillinger, Opinion Evidence in Illinois, p. 115.) But the defendant did not deny knowledge of the marihuana, and his state of mind in other respects was not material. On the other hand, we do not agree with the People's contention that the objections were properly sustained because the questions called for answers which went to the ultimate issue in the case. The ultimate issue was possession of the marihuana, not ownership of the container in which it was found. Under the circumstances, ownership of the container was not particularly significant in determining the guilt or innocence of the defendant. Moreover, the defendant, as well as Goldberg and Goldfarb, had each testified as to the circumstances under which they had received the container from their friends in Muncie, Indiana. To the extent, therefore, that its ownership was material, the facts

from which ownership was to be determined were already in evidence. We are of the opinion that the court did not err in sustaining objections to questions which called for the defendant's opinion as to the legal effect of the facts which were already in evidence.

The defendant objects to an instruction, given at the instance of the People, which substantially quoted the statutory provisions that define an accessory before the fact and establish his criminal responsibility as a principal. (Ill. Rev. Stat. 1959, chap. 38, pars. 582, 583.) The statute provides in part: "Every such accessory, when a crime is committed within or without this state *by his aid or procurement in this state,* may be indicted and convicted at the same time as the principal, * * * and punished as principal." (Ill. Rev. Stat. 1959, chap. 38, par. 583.) As the instruction was given to the jury the italicized phrase was omitted, but the defendant makes no point of the omission. His position is that the reference to the commission of a crime "within or without the state" was likely to confuse the jury, because of the testimony about smoking marihuana in Dayton, Ohio. The reference in the instruction to the commission of a crime outside of Illinois served no useful purpose in this case, for there was no charge of such a crime, and that portion of the instruction should not have been given. We think, however, that this error was not sufficiently prejudicial to warrant a reversal because the instruction, read as a whole, focused the attention of the jury upon the guilt or innocence of the defendant with respect to the crime charged in the indictment.

At the conclusion of the case the State's Attorney was permitted to inform the jury that the defendant had been convicted of the felony of robbery, second degree, in California in 1958. The record of the California conviction was admitted in evidence as an exhibit, but did not go to the jury. It consisted of exemplified copies of a complaint which was filed in the municipal court of the city and county

of San Francisco, and of "minutes" of proceedings in the superior court of the city and county of San Francisco which showed the arraignment of the defendant, his conviction of robbery, second degree, and an order placing him on probation. The defendant contends that this record falls short of the required standard of proof as announced in *Kirby* v. *People,* 123 Ill. 436, 438. Specifically he contends that it does not show an indictment, a waiver of a jury trial or a judgment. Relying on *Mitchell* v. *Van Scoyk,* 1 Ill.2d 160, 175, he argues also because it consists of "minutes" of the California proceedings it fails to constitute a proper record.

In California, however, criminal prosecutions may be commenced either by indictment or information (Cal. Penal Code §§ 682, 737,) and this prosecution was commenced by an information. The absence of a jury waiver is explained by the fact that the defendant pleaded guilty. In California (*People* v. *Duke,* 164 Cal. App. 2d 197, 330 P.2d 239), as in Illinois (*People* v. *Dodge,* 411 Ill. 549), such a plea waives a trial by jury. Although in California a judgment is not entered when a defendant is admitted to probation, (*In re Marquez,* 3 Cal. 2d 625, 45 P.2d 342,) there is no doubt that the defendant was convicted. The record itself recites that he was convicted of second degree robbery by way of preface to the order granting probation.

The defendant's argument that it was error to allow the People to establish the California conviction by using exemplified copies of minutes of the proceedings assumes that the term "minutes" is used in California in the sense of those minutes or memoranda which in Illinois are held not to constitute a part of the record. (*Mitchell* v. *Van Scoyk,* 1 Ill.2d 160.) That is not the case, however, for the California statute provides: "When judgment upon a conviction is rendered, the clerk or if there is no clerk, the judge, must enter the same in the minutes, stating briefly the offense for which the conviction was had, and the fact of a prior conviction if any." (Cal. Penal Code § 1207.)

This statute has been held to mean that the minutes constitute a part of the record, (*Ex parte Basuino, 22* Cal. 2d 247, 138 P. 2d 297; *Ex parte Murray, 43* Cal. 455,) and the attempted analogy to the term as used in Illinois is therefore inappropriate. Though the defendant has pointed out several variations from our own practice in the California record, none of them casts doubt on the material issue for purposes of impeachment,—the fact that the defendant was duly convicted of the crime of robbery. The record was properly admitted.

The record establishes the defendant's guilt beyond a reasonable doubt and the judgment of the circuit court of Douglas County must be affirmed.

*Judgment affirmed.*