The People of the State of Illinois, Plaintiff-Appellee, *v.* Walter E. Abrams, Defendant-Appellant.

(Nos. 57724-6 cons.;

First District (3rd Division)—July 18, 1974.

*Rehearing denied August 27, 1974.*

Val R. Klink, of Chicago (William D. Klink, of counsel), for appellant.

Bernard Carey, State's Attorney, and Richard L. Curry, Corporation Counsel, both of Chicago (Kenneth L. Gillis and Roger L. Horwitz, Assistant State's Attorneys, and William R. Quinlan and Lee J. Schwartz, Assistant Corporation Counsel, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is a consolidated appeal from judgments entered by the circuit court of Cook County following a bench trial finding defendant Walter E. Abrams guilty of the offenses of unlawful use of a weapon (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(4)), failure to register for a State firearm owner's identification card (Ill. Rev. Stat. 1971, ch. 38, par. 83—2), and failure to register a deadly weapon with the city of Chicago (Municipal Code of Chicago, ch. 11.1, § 7). Defendant was sentenced to 6 months in the House of Correction for unlawful use of weapons and was fined $45.00 for each charge of failure to register. Defendant contends:

1) The complaint charging the unlawful use of a weapon is void for failure to allege the requisite mental state of knowledge.

2) The complaint charging the failure to register for a State firearm owner's identification card is void from uncertainty created by the use of disjunctive language to state the charge.

3) The evidence was insufficient to prove beyond a reasonable doubt that defendant had possession of the firearm in question, or had concealed such weapon on or about his person.

4) Comments of the trial judge concerning the credibility of a defense witness evidenced a prejudice requiring reversal.

5) No competent evidence was presented that defendant had not registered both himself and the weapon in accordance with the applicable State statute and city ordinance.

The facts follow.

At trial the only witness who appeared on behalf of the State was Officer Nelson, a patrolman with the Chicago Police Department. On December 23, 1971, he and his partner went to 101 South California Avenue in Chicago to investigate a reported disturbance. Arriving at the address, which was a gas station next to an apartment building, Nelson observed defendant striking Mary Hanna, who was lying on the ground near an automobile. When Nelson attempted to intercede, defendant struck him, and Nelson informed defendant that he was under arrest. There was a struggle during the attempt to handcuff the defendant, in the course of which a revolver fell to the ground from defendant's waist. Defendant was then asked to produce a State firearm owner's identification card and a city registration card for the gun. He produced neither card. In court, Nelson identified a revolver as the one he had seen fall from defendant's person.

On cross-examination Nelson testified that when he first approached him the defendant looked up at him, and at that time they were face-to-face with each other and there were no other people in the immediate area where the incident occurred. He admitted that the revolver was not checked for fingerprints. In rebuttal, Nelson testified that the gun was not loaded.

Lee Clark testified for the defense that at about 10:00 P.M. on the day in question he had gone to the gas station at 101 South California Avenue to purchase cigarettes. He saw defendant straddling a woman who was lying on the ground next to an automobile. Clark testified that he was standing 20 to 25 feet from defendant and saw another man standing near defendant slide a revolver under the automobile next to defendant. The police then arrived. Clark identified the revolver, which had previously been identified by Officer Nelson, as the same weapon he had seen the man slide under the automobile. He stated that he had not known defendant prior to the incident.

Mary Hanna testified for the defense. She and defendant had been together for some 8 hours on the evening in question, and she had not seen a revolver in his possession during that time. They were riding in defendant's automobile near 101 South California Avenue when she told defendant she felt sick and was on the verge of convulsing. He said he would try to get some help. She stated that she recalled falling to the ground and defendant holding her as she convulsed, but could recall

nothing else until she arrived at the hospital. She stated that she and defendant had not been arguing and that he was trying to help her.

Defendant testified in his own behalf. As he and Mary Hanna were driving near 101 South California Avenue she told him she did not feel well and he pulled into the gas station and asked her what was wrong. Just at that time the door on her side opened and Mary Hanna fell to the ground. Defendant enlisted the aid of a passerby to carry the girl into the apartment building next to the station but they could not move her. He then asked the passerby to call the police or an ambulance. Defendant said Mary Hanna could not speak and was foaming at the mouth, and he got on top of her in an effort to hold her down. Some time later, while he was still lying on top of her, a policeman appeared in front of him. Someone else had come up behind defendant and pulled him off the girl and threw him against the building wall. Defendant denied that he had resisted the police and further denied that he had a weapon in his possession. He testified that the first time he saw the revolver in question was later at the police station. On cross-examination he stated that at the scene of the incident another man was standing there but he did not know who it was and did not see the man in possession of a weapon.

At the conclusion of closing arguments the trial judge stated, in reference to the testimony of Lee Clark: "The mystery man to me is just unbelievable. Totally and completely ridiculously suggestive to the mystery man." After pronouncing the findings of guilty the judge responded to the assertion of defense counsel that Clark's testimony was indeed believable, by saying, "I thought it was preposterous. * * * I stated for the record that I didn't believe him."

### I.

■■ Defendant's first contention is that the complaint charging the unlawful use of a weapon is void under the provisions of section 111—3 (a)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 111—3(a)(3)), in that it fails to allege the requisite mental state of knowledge which is an essential element of the crime charged. The complaint charged defendant as follows:

"OFF. L. NELSON complainant, now appears before The Circuit Court of Cook County and in the name and by the authority of the People of the State of Illinois states that WALTER ABRAMS has on or about 23 Dec 71 at 101 S. California committed the offense of UNLAWFUL USE OF A WEAPON in that he carried on or about his person concealed a S&W .32 cal revolver Ser # 32368 in violation of Chapter 38 Section 24 1 a 4 ILLINOIS REVISED

STATUTE AND AGAINST THE PEACE AND DIGNITY OF THE PEOPLE OF THE STATE OF ILLINOIS." The applicable statute (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(4)) provides in pertinent part:

"a. A person commits the offense of unlawful use of weapons when he *knowingly:*

(4) Carries concealed in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver or other firearm." (Emphasis supplied.)

Defendant's argument is predicated upon the requirement of section 111—3(a)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 111—3(a)(3)) that a criminal charge must set forth the nature and elements of the crime charged. Although defendant made no objection at trial to the instant complaint, a criminal charge which does not state an offense may be attacked at any time. Ill. Rev. Stat. 1971, ch. 38, par. 114—1(b).

Defendant's contention is analogous to that raised in *People v. Tucker* (1973), 15 Ill.App.3d 1003, 305 N.E.2d 676. There the defendant challenged the validity of a complaint charging the crime of aggravated battery in that the complaint did not allege that the offense had been committed with either intent or knowledge. The court held that by the use of the technical term "battery" within the charge of "aggravated battery," the definition of that term as set forth in section 12—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 12—3), was necessarily incorporated into the complaint. Further, the court held that not only was the defendant chargeable with notice of the implicitly alleged mental state by the use of the technical term in the complaint, but such complaint was legally sufficient to both inform the defendant of the offense alleged and enable him to plead a judgment in bar to subsequent prosecution. See also *People v. Mills* (1968), 40 Ill.2d 4, 237 N.E.2d 697.

■■ The complaint herein alleged that defendant had committed the offense of unlawful use of a weapon and as such charged an offense of a technical nature similar to that presented in *Tucker*. The complaint itself does not contain any allegation that the act which constituted the offense of unlawful use of a weapon was committed with knowledge. However, under the authority of the *Tucker* case, defendant is chargeable with notice that implicit within the means by which it was alleged that he committed the offense, "carried on or about his person concealed a S&W .32 cal revolver," was the allegation that the act was committed with knowledge. Also, the specific statutory provision alleged to have

been violated is cited within the body of the complaint. The complaint herein was legally sufficient to inform defendant of the specific charge alleged and to enable him to plead a judgment in bar to subsequent prosecution.

The State was sought leave to this court to amend the instant complaint to include the word "knowingly" (Ill. Rev. Stat. 1971, ch. 38, par. 111—5). Inasmuch as we have held the complaint legally sufficient it is not necessary to consider the State's motion to amend.

## II.

Defendant's second contention is that the complaint charging the failure to register for a State firearm owner's identification card is defectively uncertain as a result of the disjunctive language used therein to state the offense. Because of such uncertainty, defendant asserts that the complaint is violative of section 111—3(a)(3) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 111—3(a)(3)) and the due process requirements of the United States Constitution and the Illinois Constitution. This complaint charged defendant as follows:

> "OFF. L. NELSON complainant, now appears before The Circuit Court of Cook County and in the name and by the authority of the People of the State of Illinois states that WALTER ABRAMS has, on or about 23 Dec 71 at 101 S. California committed the offense of FAIL TO REGISTER FOR STATE FIREARM CARD, in that he knowingly acquired or possessed any firearm or firearm ammunition without having in his possession a FIREARMS OWNERS IDENTIFICATION CARD previously issued to his name by the DEPARTMENT OF LAW ENFORCEMENT in violation of Chapter 38 Section 83—2 ILLINOIS REVISED STATUTE AND AGAINST THE PEACE AND DIGNITY OF THE PEOPLE OF THE STATE OF ILLINOIS."

The applicable statute (Ill. Rev. Stat. 1971, ch. 38, par. 83—1 et seq.) provides in pertinent part:

> "§ 2.(a) No person may acquire or possess any firearm or any firearm ammunition within this State without having in his possession a Firearm Owner's Identification Card previously issued in his name by the Department of Law Enforcement under the provisions of this Act." (Ill. Rev. Stat. 1971, ch. 38, par. 83—2.)

(Section 1.1 of the statute (Ill. Rev. Stat. 1971, ch. 38, par. 83—1.1) defines the terms "firearm" and "firearm ammunition" in such a manner as to be mutually exclusive. The defendant argues that the use of the disjunctive language "acquired or possessed any firearm or firearm ammunition" renders the instant complaint uncertain in that such language

charges disparate and alternative acts, any one of which constitutes the offense.

A complaint is legally sufficient to allege an offense in the language of a criminal statute if its language so far particularizes the offense that by it alone a defendant is informed with reasonable certainty of the precise offense of which he is charged. (*People v. Lee* (1971), 48 Ill.2d 272, 269 N.E.2d 488.) The fact that two or more words which are intimately associated in their meaning are used disjunctively in a complaint does not render that complaint uncertain. (*People v. Rosenfeld* (1962), 25 Ill.2d 473, 185 N.E.2d 236; *People v. Smith* (1973), 14 Ill.App.3d 281, 302 N.E.2d 376.) However, where a statute names disparate and alternative acts, any one of which will constitute the offense, a charge which incorporates the statutory language defining the offense and which employs the disjunctive "or" is insufficient due to the uncertainty which arises from the use of the disjunctive. *People v. Heard* (1970), 47 Ill.2d 501, 266 N.E.2d 340; *People v. Lewis* (1973), 14 Ill.App.3d 237, 302 N.E.2d 157; *People v. Williams* (1973), 13 Ill.App.3d 951, 301 N.E.2d 326.

The first use of the disjunctive "or" in the instant complaint is in the phrase "acquired or possessed." In the context of the statutory language, acquisition and possession are virtually synonymous. One who has acquired a firearm or firearm ammunition must necessarily have also possessed such objects at the time acquisition was made. Likewise, it is difficult to perceive how one could have possession of a firearm or firearm ammunition without ever having acquired that possession in the first instance from some source, whether by purchase or otherwise. These words as employed in the instant complaint are so intimately associated in meaning that no uncertainty arises from their use in the disjunctive. *People v. Rosenfeld, supra.*

The second use of the disjunctive "or" in the instant complaint is in the phrase "firearm or firearm ammunition." The complaint makes no specification concerning the nature of the object or objects in question; that is, whether defendant was being charged in connection with a firearm or firearm ammunition or both. Unlike the previously discussed phrase "acquired or possessed," the use of the disjunctive in this phrase does not involve two words which are intimately associated in their meaning. The very statute under which defendant was charged defines the terms "firearm" and "firearm ammunition" as separate and distinct elements. Ill. Rev. Stat. 1971, ch. 38, par. 83—1.1.

The State argues that there are no disparate and alternative acts charged by the phrase "firearm or firearm ammunition," but that the complaint charges only one offense—the failure to register for a State

firearm owner's identification card. While it is true that only the single offense of failing to register is charged in the instant complaint, the use of the disjunctive "firearm or firearm ammunition" alleges two disparate and alternative elements, the acquisition or possession of either, when coupled with the nonpossession of the identification card, will constitute the offense. Because of the use of such disjunctive, the instant complaint lacked the necessary certainty to charge an offense and is therefore void. (*People v. Heard, supra; People v. Williams, supra.*) Accordingly, we reverse the conviction for failure to register for a State firearm card and need not reach the issue that this complaint is also constitutionally defective.

## III.

Defendant's third contention is that the evidence on the charge of unlawful use of a weapon was insufficient to prove beyond a reasonable doubt that he possessed the revolver in question or that he had concealed such weapon on or about his person. We disagree.

The issue of defendant's possession of the revolver raises essentially a question of credibility with the police officer relating one version of the events and the defense witnesses another. Officer Nelson identified the weapon in court and testified that he actually saw it fall from defendant's waist area to the ground. Mary Hanna testified that she did not see a weapon in defendant's possession that evening. However, she stated that she could not recall any of the events at the gas station other than defendant holding her as she convulsed. Lee Clark testified that he saw another man slide the revolver under an automobile which was next to defendant. Clark did not testify as to anything that occurred after the police arrived. Defendant testified that he did not have a weapon in his possession that evening and that the first time he saw the revolver in question was when it was shown to him at the police station. Although he testified that he did see another man standing nearby at the gas station he never saw the person in possession of a weapon.

■■■ The testimony of even one witness, if positive and credible, is sufficient to convict in a criminal prosecution. (*People v. Novotny* (1968), 41 Ill.2d 401, 244 N.E.2d 182.) It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact, and a conviction resting upon such determinations will not be reversed unless the evidence is so unsatisfactory as to leave a reasonable doubt of a defendant's guilt. (*People v. Mills* (1968), 40 Ill.2d 4, 237 N.E.2d 697; *People v. Wooden* (1972), 9 Ill.App.3d 310, 292 N.E.2d 236.) Here, the testimony of Officer Nelson, if believed, was sufficient to prove

beyond a reasonable doubt that defendant had possession of the revolver. ■■ Defendant argues that this court should take cognizance of the fact that no fingerprint check was made by the police on the revolver. *People v. Nelson* (1960), 18 Ill.2d 298, 164 N.E.2d 21, and *People v. Jackson* (1961), 23 Ill.2d 360, 178 N.E.2d 320, are cited by defendant as cases where the lack of a fingerprint test has influenced the court's determinations. These cases are distinguishable. In *Nelson,* the court made no reference to fingerprint testing. In *Jackson,* the absence of fingerprint evidence was mentioned by the court in pointing out that there was a lack of evidence of any nature which tied the defendant to narcotics which were found in a common refuse area of an apartment building. In the instant case there is direct evidence of defendant's possession of the revolver in that Office Nelson testified that he actually saw the weapon fall from defendant's person. Moreover, the lack of fingerprint evidence only affected the weight that the testimony of Officer Nelson should be given, and that determination was for the trier of fact.

As to the issue of concealment, defendant does not challenge the credibility of Office Nelson; instead, he asserts that the record is devoid of evidence proving that the revolver was carried by defendant in a concealed manner. Defendant argues that there is no testimony concerning the clothing he was wearing at the time, or what the lighting conditions were at the gas station, and that Nelson did not testify that he actually saw the weapon on defendant's person. It is further urged by defendant that because it was nighttime and because defendant was bending over Mary Hanna, Nelson could not have had a good view of defendant. This argument overlooks essential portions of Nelson's testimony. During direct examination, Nelson testified that in the struggle to handcuff defendant "a weapon fell from his person, somewhere from his waist area." On cross-examination, Nelson and defendant's attorney engaged in the following colloquy:

"Q. When you came upon the defendant, where was he in relation to you as you approached him?

A. As he looked up, he was looking right at me. So we were face to face, standing over the young lady.

Q. Now, your testimony was that the gun fell from the defendant. Do you know where it fell from him?

A. From the waist area, I think.

Q. You think; you are not sure?

A. That area of his body."

On redirect examination Nelson testified that he actually saw the weapon fall from defendant's person.

■■ Section 21—1(a)(4) of the Criminal Code of 1961 (Ill. Rev. Stat.

1971, ch. 38, par. 24—1(a)(4)) prohibits the carrying in a concealed manner on or about the person any pistol, revolver or other firearm. To establish a violation it is not necessary to prove that the weapon was carried in a manner to give absolutely no notice of its presence, but only that it was concealed from ordinary observation. (*People v. Colson* (1973), 14 Ill.App.3d 375, 302 N.E.2d 409; *People v. Zazzetti* (1972), 6 Ill.App.3d 858, 286 N.E.2d 745.) Concealment may be proved by either direct or circumstantial evidence. (*People v. Ostrand* (1966), 35 Ill.2d 520, 221 N.E.2d 499; *People v. Gokey* (1973), 9 Ill.App.3d 675, 292 N.E.2d 734.) In the instant case, Officer Nelson testified that after he approached defendant they were standing face-to-face over Mary Hanna, but did not testify that he saw a revolver in defendant's possession at that point. However, he did testify that later, in the struggle to handcuff defendant, he actually saw the weapon fall from an area around the defendant's waist. This testimony, if judged to be credible by the trier of fact, was sufficient to support a conclusion that the revolver was on defendant's person and concealed from ordinary observation.

## IV.

■■ Defendant next contends that the comments of the trial judge concerning the credibility of defense witness Lee Clark evidenced a prejudice by the judge against defendant and an abandonment of his role as impartial trier of fact. It is argued by defendant that these comments indicate both a refusal to weigh the testimony of Lee Clark and a preconceived adverse opinion as to defendant's cause. The comments by the judge came in part at the conclusion of the closing arguments and in part after the pronouncement of his findings. When a trial judge sits as the trier of fact, his comment as to the credibility of the witnesses after all the evidence has been presented does not reveal a prejudice or bias requiring reversal; instead, it amounts only to an explicit statement of that which would have been implicit in a finding of guilty. (*People v. Squair* (1971), 133 Ill.App.2d 507, 273 N.E.2d 522.) The defendant's contention is without merit.

## V.

Defendant finally contends that no competent evidence was presented at trial to establish that he had not registered both himself and the weapon in accordance with the applicable State statute and city ordinance. As we hold the complaint which charged defendant with failure to register for a State firearm owner's identification card to be invalid, we need consider the present contention only as it relates to the com-

plaint charging the failure to register the weapon with the city of Chicago.

The Municipal Code of the city of Chicago (Chapter 11.1, section 7) requires the registration of a firearm with the city within 10 days of its purchase or acquisition from other than a licensed firearms dealer. Thereafter, a registration certificate for the weapon is issued to its possessor within 30 days. The complaint charged defendant as follows:

"OFF. L. NELSON complainant, now appears before the Circuit Court of Cook County and states that WALTER ABRAMS has, on or about 23 Dec 71 at 101 S. California committed the offense of Fail to register a Deadly Weapon in that he Failed to register a Deadly Weapon with the City of Chicago, City Collector's Office, a firearm, to wit: S&W .38 cal B/S Revolver Serial #32368, within 10 days of its purchase, as required by law. In violation of Chapter 11 Section 1.7 of the Municipal Code of The City of Chicago."

The only evidence presented at trial concerning the allegation of defendant's nonregistration of the weapon with the city was the testimony of Officer Nelson on direct examination. The pertinent testimony follows.

"Q. Officer, I show you now what is marked People Exhibit 1 for Identification, is this the weapon that dropped from the defendant's person?

A. Yes, it is.

Q. And did you inventory it, officer?

A. Yes.

Q. When is the next time you saw it?

A. Just now when I took it out [of] the envelope.

Q. And is it in substantially the same condition now as it was when you inventoried it?

A. Yes.

Q. Did you place the defendant under arrest?

A. Yes, I did, yes.

Q. Okay, officer, after placing him under arrest, did you ask him to *produce* a State Firearm's Identification Card?

A. I did, yes.

Q. Did he *produce* one?

A. No, he did not.

Q. Did you ask him to *produce* a City Identification Card?

A. Yes, I did.

Q. Did he *produce* one of those?

A. No, he did not." (Emphasis added.)

The defendant argues that the above testimony was improperly intro-

duced into evidence in violation of his constitutional right to remain silent because it in effect utilized his silence after arrest as evidence of guilt, and that in the absence of this testimony there is a failure of proof that the weapon was not registered with the city.

We agree that insufficient evidence was introduced to establish that the defendant did not register the weapon with the city, but we need not reach the issue of the constitutional propriety of Officer Nelson's testimony. The complaint charged defendant with failing to register a deadly weapon with the city, yet there is no evidence of record, including the testimony of Officer Nelson, that the revolver was in fact not registered. Proof that the defendant did not produce a registration certificate for the weapon at the time of its recovery by the police does not prove that the weapon had not been registered with the city within 10 days of its purchase or acquisition.

In its brief the city of Chicago argues that chapter 11.1 section 8, of the Municipal Code of Chicago requires that a registration certificate be carried simultaneously with a registered firearm and must be exhibited to any police officer demanding its inspection. However, the complaint did not charge defendant with failure to possess a registration certificate at the time he was found in possession of a firearm, but did charge him with failure to register the revolver. Chapter 11.1, section 17, of the Municipal Code of Chicago imposes penalties upon any person who violates any section of the chapter dealing with the registration of firearms. The instant complaint presents a situation wherein one specific charge is alleged and the evidence in its support establishes an entirely separate and distinct violation. If the trial court had found defendant guilty of failure to possess a registration certificate a fatal variance would have resulted between the complaint and the finding. The evidence simply does not support the charge alleged in the complaint.

■■ The two cases cited by the city of Chicago are not in point. In *City of Chicago v. Dowdell* (1970), 126 Ill.App.2d 58, 261 N.E.2d 499, and also in *City of Chicago v. Franklin* (1970), 126 Ill.App.2d 43, 261 N.E.2d 506, evidence was introduced that the defendant had in fact not registered his weapon with the city. No such evidence was introduced in the instant case. The judgment as to the offense of failure to register a deadly weapon is reversed.

For the foregoing reasons the judgment in 57724 as to the unlawful use of a weapon is affirmed; the judgments and convictions in 57725 for failure to register for State firearm owner's identification card, and in 57726 for failure to register a deadly weapon with the city are reversed.

57724 affirmed; 57725 and 57726 reversed.

McNAMARA, P. J., and McGLOON, J., concur.