THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BETTY LEE BAUGH, Defendant-Appellant.

Fourth District   No. 4—85—0569

Opinion filed July 15, 1986.—Rehearing denied August 12, 1986.

Daniel D. Yuhas and Diana N. Cherry, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael M. McFatridge, State's Attorney, of Paris (Kenneth R. Boyle, Robert J. Biderman, and Perry Lee Miller, all of State's Attorneys Appellate Prosecutor, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was charged in the circuit court of Edgar County with the offense of aggravated battery in violation of section 12—4(b)(10)·of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(1)). Specifically, the indictment charged that the defendant caused bodily harm to Louise Carli, a person over the age of 60, by striking, bruising, or burning her on numerous occasions between the months of July 1982 and March 1983, all without legal justification. After a jury trial, the defendant was found guilty and sentenced to four years' imprisonment. This appeal followed.

The issues raised on appeal are: (1) the sufficiency of the indictment; (2) the admission of allegedly irrelevant and prejudicial evidence consisting of (a) photographs taken of Louise Carli several years before her death and (b) testimony of misconduct toward Louise Carli by others out of the presence of the defendant; and (3) whether such evidence was harmless.

Certain facts developed at trial were not disputed. Defendant had been employed as a housekeeper for Louise Carli and her husband in November 1981. Both of them suffered from mental impairment due to aging. This arrangement continued until the death of Mr. Carli. At that time it was agreed between defendant and the Carli children that Louise Carli would move to defendant's home and be cared for there. Defendant was to be paid $75 per week; in addition, the Carli home would be sold and any proceeds remaining after the death of Mrs. Carli, less any amounts for her medical and funeral expenses, would be paid over to the defendant as further compensation.

Mrs. Carli died in March 1983 and her body was removed to a local funeral home. In the course of preparation of her body, personnel of the funeral home noticed bruises and marks on it. They were sufficiently extensive to cause the funeral directors to bring the matter to the attention of the coroner, who viewed the body and after consultation with the police and the coroner's pathologist, ordered an autopsy

despite objections of the family. The pathologist's report indicated that Mrs. Carli died of a form of pneumonia and not as a direct result of bruising or other trauma. He stated that he found numerous contusions on the body in various states of healing. Photographs of the body, showing the bruises and contusions, were introduced into evidence. Other evidence will be discussed in connection with the issues set forth below.

In pertinent part, the indictment charged the defendant as follows:

"That Betty Lee Baugh between the months of July, 1982 and March, 1983, *** committed the offense of aggravated battery, in that the said defendant on numerous occasions knowingly, and without legal justification, caused bodily harm to Louise B. Carli, a person over the age of sixty (60), in that the defendant struck, bruised or burned Louise B. Carli about the body. In violation of chapter 38, section 12—4(b)(10) ***."

In the course of discovery in the trial court, the defendant asked for a bill of particulars demanding the exact time, date, and location of the offense charged. The trial court allowed the motion and the State furnished the defendant with all the police reports and the grand jury testimony in its possession. The defendant afterwards filed a motion to dismiss, alleging that the bill of particulars was insufficient. The trial court denied the motion, but ordered the State to provide on-going discovery "appropriately, fully, and honestly at all times up to and including the trial in this case." There is no indication in the record that the State failed in this responsibility.

On appeal, the defendant argues that the indictment was couched in language so broad that any type of contact which could have caused a bruise or burn, or any striking, which occurred during an eight-month period would be in question at trial. She maintains that this prevented her from preparing a defense. Her objections appear to be two-fold: (1) the indictment did not provide delineation of what conduct would be the focus at trial, and (2) the indictment did not specify sufficiently when the alleged offense occurred.

Section 111—3(a) of the Code of Criminal Procedure of 1963 requires an indictment to allege an offense by:

"(1) Stating the name of the offense;

(2) Citing the statutory provision alleged to have been violated;

(3) Setting forth the nature and elements of the offense charged;

(4) Stating the date and county of the offense as definitely as can be done; and

(5) Stating the name of the accused ***." Ill. Rev. Stat. 1981,

ch. 38, sec. 111—3(a).

▓▓ ▓ In order for an indictment to be constitutionally sufficient, it must (1) allow the defendant adequately to prepare his defense, and (2) allow the verdict to act as a bar to a second trial on the same offense. (*People v. Peters* (1957), 10 Ill. 2d 577, 141 N.E.2d 9.) In our opinion the indictment in the instant case met these criteria. No questions have been raised that under section 111—3(a) the offense was not named, the statutory section was not cited, and the name of the accused was not included. The controversy centers about subparagraphs (3) and (4).

▓▓ With regard to the nature and elements of the offense (subparagraph (3)), an indictment is sufficient if it is framed on the wording of the statute. (*People v. Hayes* (1979), 75 Ill. App. 3d 822, 394 N.E.2d 80.) If the statute is not descriptive of the acts which constitute the offense, or if the statute is general in nature, more particulars must be added. (*People v. Ford* (1971), 1 Ill. App. 3d 780, 276 N.E.2d 820.) "The determination of whether these standards have been met is accomplished by reference to the plain and ordinary meaning of the words of the charging instrument as read and interpreted by a reasonable person." *People v. Hayes* (1979), 75 Ill. App. 3d 822, 824, 394 N.E.2d 80, 82.

▓▓ As has been mentioned, the defendant was charged under section 12—4(b)(10) of the Criminal Code of 1961 which provides:

"A person who, in committing a battery, commits aggravated battery if he either:

* * *

Knowingly and without legal justification and by any means causes bodily harm to an individual of 60 years of age or older." Ill. Rev. Stat. 1981, ch. 38, par. 12—4(b)(10).

Reference to the indictment set forth above demonstrates that it charged that the defendant "caused bodily harm." These are the generic words of the statute. Under *Ford*, the particulars, "struck, bruised, or burned," were added. Under *Hayes*, these words have a "plain and ordinary meaning." We do not understand defendant's contention that all acts which could cause a bruise or a burn, or a striking were included. Only those acts performed by the defendant, or one for whose conduct she was responsible, could be comprehended by the charge. One of the principal lines of defense at trial was that the bruises, burns, and contusions were the result of falls or other mishaps occurring to Mrs. Carli. It is totally inconsistent for the defendant now to claim that she did not know what she was being accused of.

As to the question of the time period encompassed by the indict-

ment, the same issue was raised in *People v. Patrick* (1967), 38 Ill. 2d 255, 230 N.E.2d 843, and the supreme court disposed of it by saying:

"The defendant also argues that the indictment is insufficient to inform her of the nature and cause of the accusation against her in that it fails to specify sufficiently when the alleged crime was committed. The premise of this argument is that the indictment charges that the crime was committed between April 1, 1963, and April 21, 1965, instead of alleging its commission on a date certain.

The contention is untenable. In *People v. Blanchett*, 33 Ill. 2d 527, this court held that the elements of time and place in an indictment or information are 'subsidiary matters' which are separate and distinct from the substantive matter of stating the nature and elements of the offense charged. This court concluded that the sufficiency of an indictment or information may not be determined by whether the charge stated as definitely as could be done the time and place of an alleged offense. (See also *People v. Schmidt*, 10 Ill. 2d 221; *People v. Griffin*, 36 Ill. 2d 430.) The indictment here fixed the crime alleged at a time before the return of the indictment and within the applicable statute of limitations period. This was sufficient. (See *People v. Day*, 404 Ill. 268; *People v. Taylor*, 391 Ill. 11.) Furthermore, if the single theft charged consists not of a single act, but of a series of successive takings pursuant to a single criminal intent and scheme, it may not be possible, nor is it necessary, to indicate with any more certainty than has already been done when the offense was committed. See *Ker v. People*, 110 Ill. 627." *People v. Patrick* (1967), 38 Ill. 2d 255, 259, 230 N.E.2d 843, 845-46.

■ The defendant relies upon *People v. Collins* (1977), 51 Ill. App. 3d 993, 367 N.E.2d 504, and *People v. Lee* (1978), 57 Ill. App. 3d 927, 373 N.E.2d 744. In those cases the charging instrument alleged that the offenses occurred within a bracket of months, but in each case it was a single offense. The respective courts held the indictments to be sufficient. Defendant claims that the same doctrine should apply here, *i.e.*, that a single offense should have been alleged within the period covered. We fail to see the distinction. If the defendant had been charged with a variety of offenses during a bracketed time period, the argument might be persuasive. However, it is apparent in the instant case that the same offense was charged, albeit on numerous occasions, within the timeframe. If defendant's theory were pursued to its logical extreme, it would require a multifarious indictment, alleging the same

offense on each day of the eight-month period, or an indictment with over 240 counts. This would constitute a reversion to the antique practice when the State's Attorney's office was a fee office and he was paid by the number of counts in his indictments. During the prohibition days of the eighteenth amendment it was not unusual to find 20 or more counts in a single indictment for bootlegging.

■ Defendant also complains about the use of the conjunctive "or" (struck, bruised or burned Louise B. Carli) in the indictment. It is true that the use of the disjunctive may render an indictment void (*People v. Abrams* (1974), 21 Ill. App. 3d 734, 316 N.E.2d 5), but only if it is used in connection with disparate and alternative elements of the offense. Here the use of the word is in connection with the particulars of the offense, not the offense itself. For example, if the charge were battery by causing bodily harm or by physical contact of an insulting nature in the same count, the indictment would be void. (21 Ill. App. 3d 734, 316 N.E.2d 5.) Such is not the case here. The offense is couched in the language of the statute, and the indictment alleges bodily harm only.

We therefore conclude that the indictment met all of the statutory requirements and was sufficient to allow the defendant to prepare her defense.

■ The second requirement of the indictment is that the verdict upon it act as a bar to subsequent prosecution. In our opinion defendant could not again be prosecuted for any acts of aggravated battery against Louise Carli for the time period encompassed by the indictment. The entire trial record, including the police reports and the bill of particulars, would operate to bar the State from further prosecution. *People v. Walker* (1977), 47 Ill. App. 3d 737, 365 N.E.2d 428.

The fact that multiple acts were charged would not alter the result. A single verdict form was submitted to the jury without objection by the defendant. That verdict will operate on all charges or acts of the defendant against Louise Carli during the specified time period.

The defendant's complaints about the indictment are without merit.

■ We turn next to the evidentiary questions. The first of these concerns the admission into evidence of two photographs taken of Mrs. Carli some two or three years prior to her death. These were compared with other photographs taken at the autopsy. The State's theory was to show the deterioration in her physical condition as well as showing the bruises and burns. At trial the defendant objected on the grounds of relevancy and the court reserved ruling until the defendant's witnesses had testified. After they had done so, the earlier photo-

graphs were admitted.

On appeal the defendant again raises the question of relevancy. The general rule is that the admission of photographs is a matter for the sound discretion of the court. (*Lindsay v. Appleby* (1980), 91 Ill. App. 3d 705, 414 N.E.2d 885.) They will be excluded when irrelevant or when their prejudicial nature clearly outweighs their probative value. *Rusher v. Smith* (1979), 70 Ill. App. 3d 889, 388 N.E.2d 906.

Both the defendant and the State seem to ignore the basis upon which the trial court admitted the evidence. The State laid its foundation through the testimony of a witness, Paraschol1. She testified that the earlier photographs depicted Mrs. Carli as she appeared at the time. She then further testified to visits made to Mrs. Carli in August 1981 and March 1983. She stated that on the latter date Mrs. Carli's condition was pitiful, her eyes were swollen shut, large brown sores appeared on her body, her hair was long and dirty, and her dress had eggs and coffee down the front.

The defendant presented Mrs. Carli's grandson and was asked by defense counsel to compare her condition at the time she lived with the defendant with her condition when her husband was alive "and before." When the defendant took the stand in her own behalf, she testified about Mrs. Carli's condition when she first went to work for the Carlis in November 1981.

This testimony by the defense witnesses raised the issue of Mrs. Carli's condition prior to her entrance into the defendant's household. The defendant now seeks to confine the issue to the time during which Mrs. Carli lived with her. This was not the basis of the trial court's ruling. Rather, the defendant herself opened the door to inquiry about Mrs. Carli's condition prior to Mrs. Carli's death and Mrs. Carli's entrance into defendant's household. The photographs were probative of that question and there was no abuse of discretion in their admission.

A more complicated question is presented concerning testimony of witnesses to acts of abuse perpetrated on Mrs. Carli outside the presence of the defendant. Over objection, the trial court gave the jury proper instructions on accountability, holding that defendant "abetted" others in their harmful acts, that is, the evidence showed that the defendant encouraged, supported, or countenanced the acts of others. The court noted that this was a unique, factual situation.

What makes the resolution of the problem more difficult is the fact that the trial court changed its ruling in midstream. At the beginning of the testimony the court instructed the jury to disregard testimony of acts committed outside the presence of the defendant. Later, as the

testimony flowed on, the court allowed testimony of such acts, holding that an issue of good care of Mrs. Carli was raised in opening statements and by questions on cross-examination. Some recapitulation of the testimony is necessary. In all, ten witnesses testified about what they observed of defendant's household.

Willis Kennedy testified that he was a frequent visitor in defendant's home from September 1982 to December 1982. He recounted acts of abuse by Terry Baugh and Shirley Baugh, defendant's son and daughter. Some acts were committed outside defendant's presence and the court instructed the jury to disregard that testimony. The rest of the testimony pertained to treatment of Mrs. Carli by the defendant or others in her presence. He stated that she was "treated awful"; that defendant raised her voice to Mrs. Carli; that she grabbed Mrs. Carli when placing her in a chair; that she slapped Mrs. Carli's hands at mealtimes until the hands turned red; that defendant cursed Mrs. Carli and stated she wished Mrs. Carli would die. Kennedy stated that defendant had been present when others abused Mrs. Carli. At the conclusion of Kennedy's testimony the court again admonished the jury to disregard testimony of treatment occurring outside the defendant's presence or without her knowledge.

Sherry Kennedy, Willis's sister, testified that she saw defendant slap Mrs. Carli and heard her swear at Mrs. Carli. She stated that this occurred in November 1982. She also heard what sounded like a slap when the defendant and Mrs. Carli were alone together in a bedroom. She further noted that Mrs. Carli had a black eye at one time.

Lee Abernathy, who lived and worked across the street from defendant's home testified to rough treatment of Mrs. Carli by defendant and her family when they were putting her into or out of the car.

Keith Leloup next testified. From January through March 1983, he visited defendant's residence almost every day, although on cross-examination he admitted he never actually entered the house until after February 20, 1983. He testified to seeing defendant slap Mrs. Carli for unbuttoning herself and that this was a regular occurrence. Defendant and her children would regularly strike Mrs. Carli when moving her from room to room. Leloup stated defendant's son Terry would "flip" Mrs. Carli's nose and walk on her feet in defendant's presence. Another son, William, Jr., would flip cigarette butts at Mrs. Carli in defendant's presence. According to Leloup, defendant made no attempt to stop her children from mistreating Mrs. Carli. On one occasion, Leloup saw Carolyn Baugh, defendant's daughter-in-law, and Shirley Baugh let Mrs. Carli fall to the ground in defendant's presence. Leloup stated he noticed bruises on Mrs. Carli's body.

Leloup testified to a disputed incident. He testified that Terry Baugh shoved a broom handle in Mrs. Carli's crotch on one occasion. It was done loudly enough that defendant could surely hear what was happening, but defendant was in another room. The court allowed this testimony. Later, four witnesses for the defense, Terry, Dennis, Shirley, and defendant Betty Baugh, all testified that it was not Terry Baugh, but Keith Leloup who had poked Mrs. Carli.

Michael Sexton testified next. The bulk of his testimony concerned acts committed outside the presence of the defendant, although he stated that on one occasion he saw the defendant slap Mrs. Carli. He testified to seeing William Baugh, Jr., and Terry Baugh burn Mrs. Carli with cigarettes and stated that he spent a great deal of time at the Baugh house.

George Hughes was the next witness. He lived next door for about one year from March 1982 to March 1983 and spent some time at the Baugh house. His testimony also related primarily to acts committed by defendant's children. He stated that he had seen Archie Baugh burn Mrs. Carli. Defense counsel objected but the court allowed the testimony, ruling, as has been mentioned, that an issue of good care of Mrs. Carli had been raised in opening statement and by cross-examination. Hughes then further testified to acts of the Baugh children observed by him outside the presence of the defendant or without her knowledge, including William, Jr., striking Mrs. Carli, Carolyn striking her, Carolyn and Shirley preparing a bath of cold water for her, the same two spraying something in her face, and Shirley pouring a pitcher of water over her. He also stated that he saw Archie Baugh strike Mrs. Carli in defendant's presence and that whenever the defendant heard about these things, she did nothing about it and "laughed a little bit" when her children would "pop [Mrs. Carli] on the head."

Bertha Arbuckle, another neighbor, testified to seeing bruises on Mrs. Carli, as did Frances Paraschol1, who also testified as set forth above about the photographs taken before Mrs. Carli came under defendant's care.

The pattern is clear. The court first barred testimony concerning acts committed outside the defendant's presence or without her knowledge and instructed the jury to disregard them. However, as the testimony flowed on, the court allowed it on the basis of an issue of good care, thus effectively nullifying its prior ruling.

In our opinion it was error for the court to allow such testimony. The issue was not good care, even assuming that in a criminal case such an issue could be raised in opening statement, which necessarily occurred prior to the court's original ruling. The issue was bodily harm

to one over the age of 60, either by the defendant herself or those for whose conduct she was accountable. On the latter alternative, we feel that the evidence of the defendant's accountability for the acts of her children was weak, but not nonexistent.

Nonetheless, omitting for the purpose of argument the overkill by the State which was tolerated by the court stating that it was going to "allow the State latitude in establishing incidents which contradict the position of the defense in this area within reason," each of the witnesses did testify to acts of the defendant herself. Willis Kennedy told of such acts; Sherry Kennedy saw defendant slap Mrs. Carli; Lee Abernathy saw rough treatment by the defendant; Keith Leloup saw almost endless abuse by the defendant and in her presence; Michael Sexton saw a slap by the defendant; George Hughes saw Archie Baugh strike Mrs. Carli in defendant's presence. Many of these witnesses were impeached, but their credibility, as always, was a jury question. Their testimony of direct acts by the defendant, coupled with the autopsy photographs, was more than sufficient to sustain the verdict. The prosecutor emphasized in his closing argument and in rebuttal that the burden was on the State to establish that on one occasion the defendant caused bodily harm to Mrs. Carli. We do not perceive how the jury could have been misled by the admission of the erroneous testimony. If there had been no evidence of direct acts by the defendant herself, the outcome would have been substantially different.

The defendant has argued cumulative error, *i.e.*, that the admission of a significant amount of erroneous testimony tipped the scales in favor of the State. We do not agree. The jury was properly instructed and the arguments of counsel properly framed the issue for it. We cannot say as a matter of law that the jury was overwhelmed by the erroneous testimony.

The legislature has seen fit to single out the elderly for special protection. These victims are generally fearful, or as in the instant case, dead. In the words of the trial court, that makes such cases "unique."

The judgment of the circuit court of Edgar County is affirmed.

Affirmed.

McCULLOUGH, P.J., and MORTHLAND, J., concur.