THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
KEYSTONE AUTOMOTIVE PLATING CORP. *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-0426

Opinion filed June 26, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Thomas M. Genovese, Thomas S. Malciaukas, and Sandra T. Rasnak, Assistant Attorneys General, of counsel), for the People.

Joseph A. Ettinger and Rick M. Schoenfeld, both of Joseph A. Ettinger & Associates, Ltd., and Mirriam Miguelon, of Stone, McGuire, Benjamin & Kocoras, all of Chicago (Sidney Axelrod, of Kass & Axelrod, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:
The defendants were indicted three times for alleged violation of section 3(1)(a) of the Illinois Antitrust Act. (Ill. Rev. Stat. 1977, ch. 38, par. 60—3(1)(a).) This appeal involves the dismissal of the third indictment. The trial court dismissed this charge as defective, but denied a motion which sought to have the indictment dismissed on the grounds of prosecutorial misconduct.

The State appeals from the dismissal, and the defendants attempt to cross-appeal from the interlocutory order denying their other motion. Six of the defendants (Keystone Automotive Plating Corp., Action Bumper Co. Inc., Mc Vittie Plating Co., Charles Hogarty, Daniel Gilbert, and George Lindquist) were dismissed during the appeal, but the prosecution proceeds against Falkner Bumper, Inc., Robert Manewitz, Bobby Falkner and William Lynch.

A threshold issue raised by the defendants is whether the doctrine of collateral estoppel bars the State from contending that the indictment is sufficient when the State voluntarily dismissed a prior appeal in which an

almost identical indictment, involving the same defendants, was also dismissed as defective. The issues presented by the State's appeal are whether the indictment (1) charges an offense within the reach of the applicable statute of limitations; (2) charges an offense with sufficient specificity and certainty; (3) violates the prohibition on *ex post facto* laws by charging that the alleged conspiracy began before the effective dates of the Antitrust Act and an amendment which increased the penalty for the offense; and (4) improperly charges vertical price fixing which is not proscribed by section 3(1)(a). Additionally, we must consider whether we have jurisdiction to decide the cross-appeal.

The defendants were originally indicted in February of 1979. That indictment was dismissed on October 16, 1979, on the grounds that it was defective. After the State filed a prompt notice of appeal, the October 1979 grand jury returned two indictments which, the defendants concede, are an "almost verbatim" repeat of the dismissed indictment. (The third indictment apparently was returned because of a typographical error in the second indictment. When the latest indictment was returned, the second charge was dismissed.) The defense then argued that the first appeal and the third indictment were "based on the same cause of action" and that, as a result, they were unfairly required to litigate the same case simultaneously in separate forums. The State responded by moving to dismiss the first appeal, and we granted this motion.

*Collateral Estoppel*

■■ According to the defense, the State is estopped from bringing this appeal because it voluntarily dismissed a prior appeal which involved the same issues and the same parties. We find that this question is controlled by section 114—1(e) of the Criminal Code of 1961. (Ill. Rev. Stat. 1977, ch. 38, par. 114—1(e).) This section provides that dismissal of a charge for any one of several specified reasons, including failure to state an offense, "shall not prevent the return of a new indictment * * *." Ill. Rev. Stat. 1977, ch. 38, par. 114—1(e).

The obvious purpose of section 114—1(e) is to preclude use of collateral estoppel against the State if an indictment is dismissed and the defendant is not re-indicted until after the dismissal has become final. And, we find no reason for concluding that the initial notice of appeal was a binding election which makes section 114—1(e) inapplicable. In this case, the first indictment was dismissed on the grounds that it did not properly charge an offense. Consequently, we conclude that section 114—1(e) precludes the use of collateral estoppel against the State.

The defense relies on *People v. Colletti* (1978), 61 Ill. App. 3d 289, 377 N.E.2d 1276, but that case is not controlling because it did not refer to or consider the effect of section 114—1(e). The defense also relies, by analogy, on the civil rule that the issue of the propriety of striking a

complaint is waived when the plaintiff pleads over. In light of section 114—1(e), we find that the argument based on this analogy is unpersuasive.

*Statute of Limitations*

■■ Even though the third indictment was returned on October 31, 1979, and it alleges that the defendants participated in a price fixing conspiracy which existed from October 1975 until August 1978, they contend that this does not charge an offense which is within the reach of the applicable four-year statute of limitations (Ill. Rev. Stat. 1977, ch. 38, par. 60—6(2)). To reach this conclusion the defendants use a multi-step analysis.

First, they point out that an element of the general conspiracy statute (Ill. Rev. Stat. 1977, ch. 38, par. 8—2(a)) is proof of an overt act in furtherance of the conspiracy. Based on this other statute, the defendants assume that violation of section 3(1)(a) of the Antitrust Act also requires, as an element of the offense, proof of an overt act in furtherance of the conspiracy.

Armed with this assumption, the defendants point out that only one of the overt acts alleged in the indictment includes a date: an alleged summit meeting at Batt's Restaurant in Chicago "in or about November of 1975." And, even though a November 1975 overt act would appear to be within the statute of limitations for an indictment returned on October 31, 1979, the defendants argue that grand jury testimony shows that the meeting actually occurred during the last week of October 1975. Thus, the defendants conclude that the indictment does not charge an offense within the limitations period.

We conclude that, even if an indictment charging a violation of section 3(1)(a) must allege an overt act within the preceding four years, the present indictment meets such a requirement. The first indictment was returned in February of 1979, and the alleged meeting at Batt's was well within the four-year limitation period, whether the meeting occurred in October or November of 1975. Although that indictment was dismissed, the State filed an appeal which was pending when the present indictment was returned. Moreover, the October 31 indictment refers to the appeal of the dismissed indictment and pleads that the statute of limitations was tolled by the appeal. Ill. Rev. Stat. 1977, ch. 38, par. 3—7(c).

Section 3—7 of the Criminal Code of 1961 provides that, "The period within which a prosecution must be commenced does not include any period in which * * * (c) A prosecution is pending against the defendant for the same conduct, even if the indictment or information which commences the prosecution is quashed * * *." The "prosecution" against the defendants was initiated by the first indictment and it remained pending, within the meaning of section 3—7, while that case was on appeal. (Ill. Rev. Stat. 1977, ch. 38, par. 2—16.) We also note that the

dèfense brief concedes that these indictments are based on the "same conduct." Consequently we conclude that, even if the defendants' arguments are valid, the present indictment charges an offense within the tolled limitations period. *People v. Curoe* (1981), 97 Ill. App. 3d 258, 422 N.E.2d 931.

### Specificity and Certainty

■■ The defendants contend that the indictment lacks sufficient specificity to state an offense. In *People v. Crawford Distributing Co.* (1972), 53 Ill. 2d 332, 291 N.E.2d 648, *appealed on other grounds* (1979), 78 Ill. 2d 70, 397 N.E.2d 1362, the supreme court considered the sufficiency of an indictment which charged a violation of section 3(1)(a). The indictment in *Crawford*,

> "* * * defined its terms; named all of the defendants, both individual and corporate; described them as co-conspirators in the offense charged; described the nature of the trade and commerce involved; asserted the offense charged and that it violated section 3—(1)a of the Illinois Antitrust Act; and further detailed the scope, purpose and effect of the fixing, controlling and maintaining the price of [the commodity] sold at wholesale by the defendants in [the county where the indictment was returned.]" 53 Ill. 2d 332, 347.

The supreme court concluded that an indictment which charges a violation of section 3(1)(a), and which includes these components, is sufficiently specific to withstand a motion to dismiss.

The indictment in the present case contains all the elements listed by the supreme court in *Crawford*, and we conclude that *Crawford* is controlling precedent on the issue of the specificity of the indictment.

It is argued that *Crawford* is inapplicable because the present indictment includes a paragraph titled, "Origins of the Conspiracy." (Par. 13.) As was already noted, the indictment charges the defendants with conspiring to fix prices from October 1975 to 1978. Paragraph 13 states that, in addition to this period, the defendants also conspired,

> "* * * to fix, control, or maintain the prices charged for reconditioned automotive bumpers from a period commencing in or before 1965 and continuing thereafter to about August 1978. Although the defendants are not herein charged with a violation for their conduct during this entire period of time, this combination and conspiracy constituted one and the same as that alleged * * * elsewhere in the indictment * * *."

The first indictment straightforwardly charged a continuing conspiracy from 1965 to 1978. But the October 31 indictment avoids the issue

of whether this was proper by charging, as the only violation of the Act, a conspiracy which lasted from October 1975 to 1978.

Because of the presence of paragraph 13, the defendants argue that the indictment is so confusing that it had to be dismissed. We disagree. We find that paragraph 13 does not make the indictment confusing or misleading.

At the very least, according to the defendants, paragraph 13 "would serve no purpose in the indictment other than to inflame the passions and prejudices of the jurors." Since we are not presented with the issue of the propriety of striking paragraph 13, we do not decide whether this section should or could be removed from the indictment as surplusage.

■■ Also, the defendants argue that the indictment is defective because it charges them, in the disjunctive, with conspiring to "fix, control, or maintain" prices. This phrase parallels the language of section 3(1)(a). Although an indictment which follows the language of a statute may be defective if it lists, in the disjunctive, clearly disparate and alternative acts, any one of which will constitute the offense (*People v. Heard* (1970), 47 Ill. 2d 501, 266 N.E.2d 340), a charge is not invalid if the disjunctively listed statutory alternatives are intimately associated in their meaning. (*People v. Rosenfeld* (1962), 25 Ill. 2d 473, 185 N.E.2d 236.) We find that the terms "fix," "control," and "maintain" have intimately associated meanings, and disjunctively listing these alternatives in an indictment does not render the charge uncertain or deprive a defendant of adequate notice of the offense alleged.

The trial court was, we believe, justifiably concerned with the difficulty the defendants will have in preparing to defend against this indictment. But, we conclude that the appropriate method for obtaining more information about the State's allegations is for the defense to request that the trial court exercise its discretion and require the State to supply a comprehensive bill of particulars. Ill. Rev. Stat. 1977, ch. 38, par. 114—2.

*Retroactivity*

■■ Next, the defendants contend that the indictment violates the prohibition on *ex post facto* laws. The Illinois Antitrust Act became effective in July of 1965 (1965 Ill. Laws 1943), and was upgraded to a felony in 1973. (1973 Ill. Laws 2690.) Since paragraph 13 of the indictment refers to conduct "commencing *in or before* 1965 and continuing thereafter to about August of 1978" (emphasis added), the defendants conclude that the indictment is fatally defective.

The defendants concede that, "[A] law cannot be said to be ex post facto which provides punishment or a penalty for the continued maintenance of certain conditions which prior to the enactment of the statute,

were lawful." (*People v. Jones* (1946), 329 Ill. App. 503, 506, 69 N.E.2d 522.) But, the defendants rely on *Jones* and *United States v. Spector* (7th Cir. 1963), 326 F.2d 345, to conclude that there is an *ex post facto* violation when an indictment refers to prior lawful conduct, in addition to charging that the same conduct occurred after the effective date of the law which made it unlawful.

The State responds by referring us to *People v. Earles* (1970), 130 Ill. App. 2d 695, 264 N.E.2d 550. The indictment in that case charged a violation based on conduct which began before and continued after the effective date of the applicable statute. The appellate court wrote, "We know of no reason why conduct made criminal on a given date cannot be criminally charged to have occurred both before and after." 130 Ill. App. 2d 695, 697.

As the defendants point out, this statement was made without citation to authority. But we find that the cases upon which the defendants rely do not support their argument. In *Jones*, the applicable statute became effective in 1943 and the information charged the defendant with having caused the unlawful condition "previous to the 10th day of July 1945." (329 Ill. App. 503, 504.) The court was presented with the issue of whether the statute itself violated the prohibition on *ex post facto* laws, and it did not decide whether the charge was defective on the grounds that it referred to conduct which was lawful before the effective date of the law. Moreover, we find that *United States v. Spector* supports the validity of the present indictment. The defendants in *Spector* were charged with entering into a conspiracy which lasted from May 1956 to November 1956. But, the alleged conspiracy did not become unlawful until July 28, 1956. As a result, the trial court restricted the government's proof to evidence that the conspiracy existed on or after July 28. The Circuit Court of Appeals merely held that this was not error. According to the Court of Appeals, "After the limitation, if the remaining allegations of the indictment charge the commission of the crime, there can be no prejudice to the defendant. In fact, prejudice would lie in a failure to limit." 326 L. 2d 345, 347.

Obviously, *Spector* does not stand for the proposition that the indictment in this case is fatally defective. But, because we are not faced with determining the propriety of limiting the State's evidence, we express no opinion on whether this would be necessary or appropriate. We merely conclude that we find no support for the defendants' argument, and it is not persuasive.

*Vertical Price Fixing*

■■ The defendants also contend that the indictment is defective on the

grounds that it charges vertical price fixing, something which is not proscribed by section 3(1)(a). (See Ill. Ann. Stat., ch. 38, par. 60—3, Committee Comments, at 451-52 (Smith-Hurd 1977).) As the Committee Comments explain, "Section 3(1) does not reach vertical agreements, such as agreements between buyers and sellers fixing the price at which the buyer shall resell." This is clearly evident, because the statute specifies that, to be a violation of section 3(1), the prohibited conspiracy must be between persons who are competitors, or who would be competitors but for a prior agreement. Thus, section 3(1) does not reach price fixing between a manufacturer and the retailer which resells its products (unless, of course, they are or would have been competitors but for the prior agreement).

Despite the fact that the indictment sets forth the provisions of section 3(1)(a), the defendants contend that they are charged with vertical price fixing. Again, the conclusion reached by the defendants requires a multistep analysis.

Paragraph 11 of the indictment charges a conspiracy to fix the prices of "reconditioned automotive bumpers sold at wholesale *and retail.*" (Emphasis added.) All the named defendants are allegedly in the business of manufacturing reconditioned automotive bumpers. Since the co-conspirator clause does not specify whether the unnamed co-conspirators are manufacturers or retailers, and paragraph 11 refers to price fixing "at wholesale and retail," the defendants contend that, "the term 'co-conspirators,' when taken in the context of paragraph 11 of the indictment, could and probably does include retailers." Thus, the defendants conclude that they are charged with a vertical conspiracy with retailers.

While this is a clever interpretation of the indictment, we find that it does not consider the indictment as a whole. By setting forth the language of section 3(1)(a), the indictment clearly specifies that the conspirators and co-conspirators must be persons who are competitors, or who would be competitors, but for the conspiracy. Furthermore, the indictment states that the manufacturers sell "primarily" to retailers or distributors. This would not preclude proof that the defendants made direct sales to consumers, and it is possible that the defendants and the hypothetical retailers are competitors who could be co-conspirators under section 3(1)(a). Therefore, we conclude that the defendants are not charged with vertical price fixing.

### Prosecutorial Misconduct

Shortly before the grand jurors began deliberating on whether to vote a true bill, a prosecutor told the jurors that, if the individual defendants were convicted, they would receive probation—even though

these defendants were being accused of a Class 4 felony for which they could be sentenced to three years imprisonment. Ill. Rev. Stat. 1977, ch. 38, pars. 60—6, 1005—8—1(b)(5).

Based upon this statement, and certain other matters, the defendants moved to dismiss the indictment on the grounds that the true bill was induced by prosecutorial misconduct rather than fair and independent deliberations by the grand jurors.

■■ This motion was denied by the trial court and the defendants appeal from that order. Although the issue has not been raised by the parties, we have a duty to determine whether we have jurisdiction. (*People v. Williams* (1977), 53 Ill. App. 3d 335, 368 N.E.2d 706.) The 1970 Illinois Constitution provides that we have jurisdiction to hear appeals from both final judgments and from other orders for which the Supreme Court Rules permit interlocutory appeals. (Ill. Const. 1970, art. 6, §6.) Under the present rules, the appellate court does not have jurisdiction over an interlocutory appeal from an order denying a defendant's motion to dismiss an indictment. (*People v. Culhane* (1975), 34 Ill. App. 3d 158, 340 N.E.2d 63; *People v. Miller* (1966), 35 Ill. 2d 62, 219 N.E.2d 475; see also Ill. Ann. Const., art. 6, §6, Commentary, at 442 (Smith-Hurd 1971) (noting that *People v. Miller* remains valid under the 1970 Constitution).) It was insignificant, in *Miller*, that the State appealed from an order dismissing several counts of an indictment and the defendants cross-appealed from an order denying their motion to dismiss the other counts: "[T]he appellate court could acquire no greater jurisdiction on cross appeal than it could on appeal." (35 Ill. 2d 62, 68.) A defendant's remedy "if any" from an order denying a motion to dismiss an indictment, on the grounds of prosecutorial misconduct, is by direct review following conviction. (*Hughes v. Kiley* (1977), 67 Ill. 2d 261, 267, 367 N.E.2d 700.) It is for the supreme court to decide whether to promulgate a rule which would permit a defendant to petition for leave to interlocutorily appeal an order denying a motion to dismiss an indictment because of prosecutorial misconduct. Since the Supreme Court Rules do not provide for interlocutory determination of this cross-appeal, we have no jurisdiction to decide that part of the case.

For the preceding reasons, (1) the order dismissing the indictment is reversed and remanded; and (2) the defendants' cross-appeal is dismissed.

Reversed and remanded in part; dismissed in part.

MEJDA and WILSON, JJ., concur.